Dulce BARRY, Plaintiff in Error,

v.

Claud FRIZZELL, Individually and as a Trustee; Burl Cumpton; Clifford Gaither, Bonnie Gaither and Harold Gaither, individually and as co-partners doing business as the Black Crystal Coal Company, and as co-partners doing business as the Cedar Creek Coal Company, Defendants in Error.

No. 39294.

Supreme Court of Oklahoma.

May 2, 1962.

Harold B. Dane, Stigler, for plaintiff in error.

Stipe & Gossett, McAlester, for defendants in error, Claud Frizzell and Burl Cumpton.

DAVISON, Justice.

This is an appeal by Dulce Barry (plaintiff below) from a judgment of the lower court denying her action and prayer that she be declared the owner of an undivided one-third interest in certain real estate (approximately 80 acres) located in Haskell County, Oklahoma. The parties will be referred to as they appeared in the lower court or by name.

Plaintiff is the former wife of one Don Barry from whom she first secured a divorce on April 23, 1959. After remarriage she secured another divorce on September 8, 1959. She initiated the action December 5, 1959, against Claud Frizzell, individually, and as Trustee; and Clifford Gaither, Bonnie Gaither and Harold Gaither, co-partners doing business as Black Crystal Coal Company and as Cedar Creek Coal Company. Burl Cumpton became a party defendant and filed answer on the day of the trial. In her petition the plaintiff sought to have the court adjudge that under the facts and circumstances a constructive or resulting trust was created by force of law, whereby, Frizzell acquired and held title to a one-third interest in the lands in trust for Don Barry. Plaintiff's right or title to such interest is by reason of the provisions of her divorce decree from Don Barry which in express terms vests in plaintiff all the interest of Don Barry in the lands. The defendants Gaither are the lessees of the lands under the name of Black Crystal Coal Company and occupy the position of stakeholders and in their answer state their willingness and ability to pay the royalty payments, as directed by the court, to the party entitled to receive such royalty payments.

After the introduction of the evidence of all the parties the lower court denied plaintiff any relief and rendered judgment for the defendant. Plaintiff has appealed to this court.

Plaintiff urges that the judgment was not sustained by the evidence, was against the clear weight of the evidence and is contrary to law.

■ This is a case of equitable cognizance and this court will consider and weigh all of the evidence. It was agreed that the divorce decree rendered when plaintiff divorced Don Barry provided that plaintiff have all interest of Don Barry in the land and that the title to the land was in the name of the defendant Claud Frizzell. It also appears to be conceded that Frizzell acquired the entire title to the land in December, 1957. The record reflects that at all times mentioned Barry, Cumpton and Frizzell were employees of Garland Coal Company or of Mine Service Company which operates Garland Coal Company, except that Barry's employment was terminated February 12, 1959.

Plaintiff's evidence consists of her own testimony and some documentary proof. It appears from her testimony that prior to December, 1957, or at least prior to the date Frizzell acquired title, plaintiff and her husband (Don Barry) considered buying the land, but that Cumpton "told him to lay off the land" and "to let Claud Frizzell bid on it;" that Cumpton asked about the land numerous times and that plaintiff checked the county records in April or May, 1958, and found Frizzell had acquired title; and that Don Barry offered to pay to Frizzell one-third of the cost. Plaintiff also testified that Don Barry received three checks from Frizzell representing one-third of the royalty

from coal produced from the land. The first check was received in December, 1958, for $1079.59. With reference to the receipt and amount of this check the plaintiff introduced as her Exhibit 2, a "Statement of Coal Royalty" from the land. This statment was admittedly in the handwriting of Cumpton except for a portion hereinafter mentioned. The statement, in Cumpton's handwriting, was for "damage" and for royalty for the months of September, October and November, 1958, in the total sums of $6,629.44 and sets forth the cost of the land, with attorney's fee and taxes in the total sum of $3390.67, and "amount to be disbursed" of $3238.77. This amount is then shown in one-thirds of $1079.59, each to Frizzell, Barry and Cumpton. The portion of the statement not in Cumpton's handwriting are notations designating one-third of the total cost and one-third of the total royalty as "Barry share of cost" and "Barry share of receipts." There was no proof of who wrote these notations. Plaintiff testified this Exhibit 2 was used in connection with the 1958 Federal Income Tax return of her and Barry and that one Hardy Hall prepared the return.

The second check was received in January, 1959, for $408.16 and the third check in February, 1959, for $495.65. These two checks were each accompanied by a statement of "Coal Royalty" from the land for the previous month and under "Distribution" reflect a division of the total royalty for the respective months into thirds identical with the above amounts. Frizzell, Barry and Cumpton were each shown to be the recipient of a one-third share.

Plaintiff also introduced a "Depletion Schedule of Coal Properties—1958" filed by her and Barry in connection with their tax return and reflecting cost of $1130.22, which agrees with one-third of the cost of the land shown on Exhibit 2. Plaintiff further introduced a letter from her attorney to Frizzell, dated April 25, 1959, with copy to Black Crystal Coal Company (lessee and producer of the coal) advising of the terms of the divorce decree. Plaintiff's evidence also showed subsequent accrual in 1959 of coal royalty and that she received no part of this royalty.

The evidence of the defendants was testimony by Cumpton and Frizzell. Cumpton denied that he owned any interest or that he ever entered into any agreement that he have an interest in the land. Cumpton admitted that he received the same amounts from Frizzell as were received by Barry in December, 1958, and in January and February, 1959, and likewise received the statements of "Coal Royalty" that accompanied the latter two checks. He explained that he was paid for making a survey of the boundaries and some other work and that his agreement with Frizzell was:

"He told me if I would help him to get this straightened out—We finally received $30,000.00 on this land—and when he got ready anytime after January 1, 1958, he could discontinue this arrangement. And I think I was well paid for what I did." (It appears the court reporter erred in setting forth the above figure as the record shows $3000)

Cumpton identified plaintiff's Exhibit 2 as being in his handwriting and said he copied it from a typewritten sheet at the request of Hardy Hall while he (Hall) went to the drug store and did not know where Hall got it and that Hall did not make out his tax return.

The defendant Frizzell testified he bought the land from the Indian Department and paid for it and nobody else paid him for it and that his reason for paying Barry was:

"A. Don was superintendent for Garland Coal Company. I thought when Gaither got in there—they had a small machine, and they probably wouldn't make more than one or two cuts and get out, and I would get Don in there, and he was sitting over there with a 625. If they didn't get out that would put pressure on them and they

would leave the coal in good shape and maybe dig more of it."

and that:

"A. Well, I told him I would give him a third interest in the profits on it, and didn't tell him how long.

"Q. Did you tell him you could terminate that at any time you wanted to?

"A. Yes, sir."

He stated he knew nothing about plaintiff's Exhibit 2 or the Depletion Schedule; that he believed he gave Barry the statements of "Coal Royalty" that accompanied the January and February, 1959, checks and he thought Cumpton prepared the statements and also gave him (Frizzell) a copy; that:

"He (Barry) quit the coal company. I figured when he quit I never would get a chance to use him. The big dragline was what I was after. I wanted to get my coal dug."

and that relative to the tax:

"Well, if I was going to pay that money, I said, 'you will have to pay the taxes on it. I am not going to pay the taxes.' Whether they did it or not I don't know. I paid on mine."

Frizzell did not deny the accuracy of the figures in plaintiff's Exhibit No. 2.

The deposition of Don Barry was introduced by stipulation of the parties. Barry stated regarding purchase of the land, that Cumpton said "to forget it" and that Barry would share one-third; that he never talked to Frizzell about the land; that the money paid him was not a gift; and that:

"My understanding was that I'd share in the production. We talked about maybe getting another lease or two but never did."

and further:

"Q. After you started receiving the checks, is when you knew that you, Claude and Burl were the three owners?

"A. When I saw the statement I was sure that Claude was the third partner."

In all fairness it should be stated that there are contradictory statements in Barry's testimony and that it appears his marital trouble may have influenced his attitude as to his interest, if any, in the land.

In Powell v. Chastain, Okl., 318 P. 2d 859, we discussed trusts created by operation of law which are generally referred to as implied trusts and stated at page 862 as follows:

" * * * Resulting trusts are those which arise where the legal estate in property is disposed of or acquired, not fraudulently or in violation of any fiduciary duty, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. * * *"

In Marshall v. Amos, Okl., 300 P.2d 990, we held that the burden of establishing a constructive trust rests upon him who seeks its enforcement and quoted with approval as follows:

" ' * * * When the evidence is doubtful and not clear and satisfactory, or is capable of reasonable explanation on any theory other than that of the existence of an implied or resulting trust such trust will not be held sufficiently established to entitle the beneficiary to a decree declaring and enforcing it. * * *'"

Also in the Marshall case, supra, we held:

" 'But the general rule is that a mere preponderance of the evidence is not sufficient to establish a constructive trust, but that it must be established by evidence which is clear, definite, unequivocal and satisfactory, or such as to lead to but one conclusion, or as to leave no reasonable doubt as to the existence of the trust. * * *'"

See also Poe v. Poe, 208 Okl. 406, 256 P. 2d 153, in which we considered the character of evidence required to establish a constructive trust. Therein we stated that a mere conflict in the testimony of witnesses will not render the evidence unclear or indecisive.

■ From our examination of the entire record it is our opinion that plaintiff's evidence established a resulting or constructive trust in Frizzell in favor of Barry and which accrued to plaintiff by reason of the divorce decree. Barry contemplated purchasing the land and forebore making a bid or taking steps to make the purchase upon the strength of representations directly by Cumpton that another party would make the bid and purchase. It is apparent to us that the evidence establishes an arrangement by which Frizzell would hold the title for the benefit of the others in proportions of one-third each. Barry refers to the parties as "partners." While the testimony of Cumpton that he received the money in payment for services could be given some credence, still it must be admitted that the means and method of payment and the indefinite period of compensation is most unusual and incredulous. However, the interest of Cumpton is not before this court except as it may aid in determining the interest of Barry and to which plaintiff is entitled.

The testimony that the royalty proceeds were paid to Barry purely because he was employed by a concern which had a large coal mining machine and, as we interpret the testimony, to in some way influence the concern then recovering the coal to quit mining, so the larger machine could be used is even more incredible in the light of the evidence. It is denied this·was a gift to Barry. The preparation of plaintiff's Exhibit 2 is denied by Cumpton and Frizzell but it must be admitted that the computations reflected thereon resulted in the figure of $1079.59 that was admittedly received by each of the parties. As there is no complaint as to the correctness of this sum then the items of computation must be deemed a correct disposition of the Coal Royalty. All distributees of the Coal Royalty accept the verity of the Coal Royalty statements that accompanied the January and February, 1959, checks of Frizzell. This documentary evidence was prepared and distributed prior to plaintiff's divorce action and before any controversy and should be regarded, in the absence of mistake or fraud, as the free and mutually acceptable acts of the parties.

■ The word "royalty" as used in instruments in connection with the production of minerals means in its popular sense a share of the products or proceeds therefrom, reserved·to the *owner* of land for permitting another to use the property. Simpson v. Burris, Okl., 365 P.2d 134, 137. We have reviewed the record and we cannot say that the evidence, considered in its entirety, was violative of the rule requiring that evidence to establish a trust must be clear, unequivocal and decisive.

It is our opinion that the evidence is sufficiently clear, cogent and convincing to establish a resulting trust in favor of plaintiff and that the judgment of the trial court is. therefore contrary thereto and is reversed.

Our decision makes it unnecessary to consider other errors urged by plaintiff.

Reversed with directions to render judgment for plaintiff vesting in her an undivided one-third interest in the lands and for an accounting against Claud Frizzell and for a further accounting against the defendants. Gaither from the date the said Gaithers received legal and proper notice of plaintiff's claim.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.