LEADER v LEADER

1. Divorce—Jurisdiction—Residence—Domicile—Absence from State—Reconciliation—Fear of Harm—Intent.

A plaintiff in a divorce action was a resident of the state for purposes of jurisdiction even though she was temporarily absent from the state during part of the 180-day statutory residency period prior to initiation of the action, where she left the state to attempt a reconciliation with the defendant at his specific request, she was unable to immediately return because she was placed in fear of harm to herself and loss of custody of her child, and she had no intention of giving up her Michigan domicile unless the attempted reconciliation had proved effective (MCLA 552.9; MSA 25.89).

2. Husband and Wife—Divorce—Residence—Domicile.

The residence and domicile of a wife are not necessarily the same as those of her husband.

3. Domicile—Residence—Intent—Synonyms—Preserving Domicile.

Residence in Michigan is a place of abode at which one intends to remain; domicile and residence are synonymous terms, but actual residence is not necessary to preserve domicile after it is once acquired.

4. Domicile—Residence—Intent—Physical Presence.

Intent, rather than physical presence, is the key factor in determining a person's residence.

5. Domicile—Courts—Questions of Fact.

The question of domicile is a question of fact for trial court resolution.

Appeal from St. Clair, Halford I. Streeter, J.

References for Points in Headnotes
[1] 24 Am Jur 2d, Divorce and Separation § 25 et seq.
[2] 24 Am Jur 2d, Divorce and Separation § 258.
[3, 4] 25 Am Jur 2d, Domicil § 4.
[5] 25 Am Jur 2d, Domicil § 101.

Submitted December 7, 1976, at Lansing. (Docket No. 28093.) Decided January 6, 1977.

Complaint by Teresa M. Leader against Robert A. Leader for divorce. Motion by defendant to dismiss the complaint for lack of jurisdiction. Motion denied. Defendant appeals by leave granted. Affirmed.

*Hilla W. Wright,* for plaintiff.

*Metry, Metry & Sanom* (by *William W. Swor),* for defendant.

Before: D. E. HOLBROOK, P. J., and ALLEN and D. C. RILEY, JJ.

D. E. HOLBROOK, P. J. Defendant appeals from an order of the trial court denying his motion to dismiss. Plaintiff had filed a complaint for divorce in February of 1976. Defendant then filed his motion to dismiss approximately one month later, maintaining that plaintiff failed to meet the 180-day jurisdictional residency requirement of MCLA 552.9; MSA 25.89. This Court initially denied defendant leave to appeal, but, following defendant's application for rehearing, this Court did grant defendant leave to appeal.

The only question we must decide is whether the trial court was correct in determining that plaintiff had met the jurisdictional prerequisite necessary to maintain her action for divorce. The controlling statute in pertinent part provides that: "A judgment of divorce shall not be granted * * * unless the complainant or defendant has resided in this state for 180 days immediately preceding the filing of the complaint." MCLA 552.9; MSA 25.89. There is no disagreement as to any of the

underlying facts herein. Plaintiff was physically outside the State of Michigan during most of the jurisdictional period.

Because of the unusual factual circumstances of this case, past precedent does not dictate a legal result. Plaintiff and defendant had lived in Michigan for a substantial period of time. They were married in Michigan in 1972. Defendant had three children by a prior marriage, and the parties had one child by this marriage. Plaintiff and defendant apparently had separated some time prior to the instant action and filed for divorce in Michigan. However, a reconciliation was sought and the parties moved many of their belongings to Kentucky where defendant secured employment and the parties remained for a period of time.

Plaintiff left Michigan on or about October 1, 1975, and remained in Kentucky until January 21, 1976, with the exception of a two-day trip to Michigan. Plaintiff testified that she went to Kentucky with defendant specifically at his request in order to attempt a reconciliation, which she doubted would be successful. Plaintiff testified that she did not intend to stay in Kentucky, or anywhere else, with defendant if the reconciliation was unsuccessful. Plaintiff further testified that she intended to wait and see if the marriage could be saved before considering any place for residence. Plaintiff also testified that she only remained in Kentucky after the first two or three weeks because of a desire not to leave the children without a mother and because of threats which were later made to her by defendant. Finally, however, plaintiff did return to Michigan, her "home" state after almost a four-month absence. We must decide whether this absence is a jurisdictional defect which will defeat plaintiff's action for divorce.

An older Supreme Court case would appear to require reversal of the trial court. *Hoffman v Hoffman,* 155 Mich 328; 118 NW 990 (1909). In *Hoffman,* the plaintiff, a long-time resident of Michigan, married a resident of Chicago, Illinois. Apparently plaintiff and defendant both lived with their mothers, which came to be a source of trouble. There was a dispute as to where the parties would live. Finally plaintiff-wife went to Chicago where her husband lived and subsequently moved a good deal of her household furnishings there. Shortly thereafter she returned to Michigan, however, and instituted a divorce action. The Court found that she had not resided in Michigan for the requisite period of time. The following quotation is quite revealing:

"[T]here is nothing to indicate that, when she went to Chicago with the defendant, she had any other thought than to make her home with him, either at Chicago, where he then lived, or, if they should subsequently return to St. Joseph, at that place. She gave up her residence for that of the husband, and there is no room for saying that she continued her residence during this time at St. Joseph. A distinction is sought to be drawn between residence and domicile, complainant's counsel conceding that the rule is that the domicile of the husband is that of the wife, but contending that, under the facts in this case, her residence continued to be in St. Joseph. We cannot assent to this view. Not only was her domicile in Chicago, but she undoubtedly intended to reside there, unless a certain contingency should happen, which did not occur." *Hoffman, supra,* at 330.

This case, although factually similar, is necessarily distinguishable. As can be seen, Mrs. Hoffman at the time she left Michigan fully desired to live with her husband and make her home with him indefinitely and hopefully permanently. There was

no indication of doubt or trouble at that time. In the instant case, plaintiff reluctantly went to Kentucky with the hope that the marital difficulties would be resolved and eventually a permanent, or at least indefinite, solution could be had. The establishment of a residence had not solidified and until such time as it did, her true residence according to her intent, remained in Michigan. We feel that the unusual facts surrounding this case require that it be distinguished from *Hoffman.* We do not rule that *Hoffman* is no longer the law, but obviously it must be considered in light of its facts and the characteristics of the time in which it was decided. Divorce rates, unfortunately, in our time have increased dramatically. Furthermore, even in a stable and healthy marriage, the residence and domicile of a wife are not necessarily the same as those of her husband. *People v Dawell,* 25 Mich 247, 263; 12 Am Rep 260 (1872), *Napletana v Hillsdale College,* 385 F2d 871 (CA 6, 1967). Times change and this must be considered as a fact which must be taken into consideration herein. Were the facts exactly as in *Hoffman,* it would control. Herein, the facts are sufficiently different than those existing in *Hoffman* as to justify a different result.

Residence in Michigan is defined as a place of abode accompanied with the intention to remain. *Hartzler v Radeka,* 265 Mich 451; 251 NW 554 (1933), *Reaume & Silloway, Inc v Tetzlaff,* 315 Mich 95; 23 NW2d 219 (1946). Domicile and residence in Michigan are synonymous terms.[1] *Hartz-*

---

[1] In 25 Am Jur 2d, Domicil, § 4, pp 7–8, it was observed that:

"By comparison, domicil is said to be inclusive of residence, having a broader and more comprehensive meaning than residence. Residence, together with the requisite intent, is necessary to acquire domicil, but actual residence is not necessary to preserve a domicil after it is once acquired."

Recently, a Kentucky Court noted that while the term "residence"

*ler, supra,* and *Reaume & Silloway, supra.* Today in our mobile society physical presence for a longer period of time is no longer the key factor it once was.[2]

For many purposes, residence must be considered in light of a person's intent. *Grable v City of Detroit,* 48 Mich App 368; 210 NW2d 379 (1973). Presence, abode, property ownership and other facts are often considered, yet intent is the key factor. This has been recognized in most jurisdictions and repeatedly cited. See *Fletcher v Fletcher,* 182 Neb 549; 156 NW2d 1 (1968), *Julson v Julson,* 255 Iowa 301; 122 NW2d 329 (1963),[3] *Davidner v Davidner,* 304 Minn 491; 232 NW2d 5 (1975).

The record amply supports plaintiff's claim that she did not abandon her Michigan residence and establish Kentucky as her place of residence. Plaintiff testified as follows:

---

has a much narrower technical significance than the term "domicil", the two terms are almost universally used interchangeably. *St John v St John,* 291 Ky 363; 163 SW2d 820.

[2] The Minnesota Supreme Court recently noted:

"Domicile is the union of residence and intention, and residence without intention, or intention without residence, is of no avail. Mere change of residence, although continued for a long time, does not effect a change of domicile. 6A Dunnell, Dig (3d ed) § 2816; *In re Estate of Smith,* 242 Minn 85; 64 NW2d 129 (1954). Moreover, a domicile, once shown to exist, is presumed to continue until the contrary is shown. See, *Lusk v Belote,* 22 Minn 468 (1876)." *Davidner v Davidner,* 304 Minn 491, 493–494; 232 NW2d 5, 7 (1975).

This is particularly compelling because the Minnesota divorce statute contains a jurisdiction requirement which reads virtually the same as Michigan's, except that the period of time differs. 304 Minn at 491, n 1; 232 NW2d at 6, n 1.

[3] The Iowa Supreme Court recently was faced with a problem concerning the change of domicile for divorce purposes and indicated:

"The change of a person's domicile is considered a serious matter. A domicile once acquired continues until a new one is perfected by the concurrence of three essential elements: (1) a definite abandonment of the former domicile; (2) actual removal to, and physical presence in the new domicile; (3) a bona fide intention to change and to remain in the new domicile permanently or indefinitely. * * *

"Domicile is largely a matter of intention, which must be freely and voluntarily exercised." (Citations omitted.) *Julson v Julson,* 255 Iowa 301; 122 NW2d 329, 331 (1963).

"*Q. (by Mrs. Wright, plaintiff's attorney)* And would you tell the court how you happened to leave Michigan?

"*A.* On a reconciliation. We were going though a divorce proceeding, and we decided to try one more time, out of the state of Michigan. So we left and went to Kentucky because it was where Bob had always wanted to do, so I agreed, Okay, fine.

"*Q.* Did you expect this reconciliation to work?

"*A.* No.

"*Q.* And how long after you got to Kentucky did you find that it was not working?

"*A.* I would say about two or three weeks, because there were things brought up that could not be forgotten about the past.

"*Q.* And why didn't you leave immediately?

"*A.* Well, as you know, there are four kids involved, and I couldn't just walk off on the kids and him."

Furthermore, plaintiff explained her reasons for not leaving Kentucky sooner than she did.

"*Q.* Did your husband ever beat you up?

"*A.* Yes.

"*Q.* How many times?

"*A.* Once.

"*Q.* How badly did he beat you up?

"*A.* Well, it hurt. I tried to press charges, but I guess the police said it wasn't nothing too big.

"*Q.* Has he threatened to beat you up again?

"*A.* Oh, yes.

"*Q.* Did he threaten to beat you up in Kentucky?

"*A.* Yes, several times.

"*Q.* Did he threaten to bring suit against anyone here in Michigan?

"*A.* Yes.

"*Q.* Did he threaten to keep your baby from you?

"*A.* Yes.

"*Q.* And were you afraid that any or all of these things might happen?

"*A.* Yes.

"*Q.* Is that one of the reasons you didn't leave?

"*A.* Yes, it is.

"*Q.* Did you write your father you only wished you were brave enough to leave before you ·did?

"*A.* Yes, I did."

Plaintiff did not expect the reconciliation with her husband to be successful. Nevertheless, she made an effort. Almost immediately she discovered that the reconciliation would not work. Because of fear of harm to herself and fear of the loss of her child she was unable to return to Michigan. The trial court after a hearing on the matter made a proper finding. It is important to note that defendant did not testify at the hearing nor did he offer any other testimony which would contradict plaintiff's testimony.

The trial court herein found as follows: "I suppose the question is what her intent was when she left. * * * I guess the way she put it, she went down there to see if it would work or not and she did not intend to remain unless it did." Because of the importance of factfinding as to plaintiff's intent, we feel the trial court's ruling should be entitled to great weight.[4] The question of domicile is a question of fact for trial court resolution. *Hartzler, supra,* and *Reaume & Silloway, supra.* We feel there were sufficient facts to uphold the finding that plaintiff was a "resident" for purposes of jurisdiction for divorce, although she was temporarily absent from the state.

Affirmed.

---

[4] The Minnesota Supreme Court has recently held:

"[A] finding of proper domicile to confer jurisdiction for commencement of a divorce action will not be reversed unless it is palpably contrary to the evidence." *Davidner v Davidner,* 304 Minn 491, 493; · 232 NW2d 5, 7 (1975).