MOBIL OIL CORPORATION v DEPARTMENT OF TREASURY

Docket No. 61016. Submitted June 16, 1982, at Lansing.—Decided
October 1, 1982.

The Michigan Department of Treasury issued an assessment of
single business tax liability against Mobil Oil Corporation in an
amount of $184,565. Mobil paid all but $77,705 of the assess-
ment and contested the $77,705 amount in the Michigan Tax
Tribunal. The parties stipulated that Mobil would not be liable
for payment of the $77,705 amount if payments made by Mobil
to nonoperating owners of premises covered by oil and gas
leases were not royalties under the Single Business Tax Act or
if those payments were not deducted by Mobil in arriving at its
federal taxable income as the meaning of that clause is in-
tended in the Single Business Tax Act. The Tax Tribunal found
that the payments were royalties and were deducted by Mobil
in arriving at its federal taxable income. The tribunal ruled
that Mobil was required to add the amounts thus deducted to
its tax base in determining its single business tax liability.
Mobil appeals. *Held:*

1. Mobil's argument that the payments were not royalties
within the meaning of the Single Business Tax Act because the
payments were exclusions rather than deductions for purposes
of the federal income tax is rejected since it appears that the
exclusion operates only for the purpose of computing the tax-
payer's oil depletion allowance deduction and it is clear that
such payments are otherwise treated as deductions for purposes
of computing the taxpayer's federal income tax liability.

2. Mobil's argument that the type of tax created by the
Single Business Tax Act was not intended to tax the sort of
payments involved here is without merit. The term "royalties"
as used in the federal income tax act is used in a context

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 34 Am Jur 2d, Federal Taxation § 7689.
  38 Am Jur 2d, Gas and Oil §§ 110, 189.
[2] 73 Am Jur 2d, Statutes § 145.
[3] 34 Am Jur 2d, Federal Taxation § 7660.
[3] [No reference]
[5] [No reference]

comparable to its use in the Single Business Tax Act, and the payments made by Mobil to nonoperating landowners in connection with the production of oil and gas from property owned by the landowners are "royalties" as that term is used in the Single Business Tax Act.

3. Mobil's argument that the payments made by it to the nonoperating landowners were not deducted by it in arriving at its federal taxable income is completely devoid of merit.

Affirmed.

1. Taxation — Oil and Gas Leases — Royalties — Federal Income Tax.

Payments made by an operating lessee to nonoperating property owners in connection with the production of oil and gas and other minerals from the property of such landowners are considered to be royalties for federal income tax purposes; likewise, Michigan courts have also included such payments within the definition of royalties.

2. Statutes — Judicial Construction.

It is presumed that the Legislature in using a term which has a well-defined meaning at the time of a legislative enactment intended that meaning to be employed.

3. Taxation — Oil and Gas Leases — Federal Income Tax — Depletion Allowance Deduction.

Both the lessee and the lessor of property for the production of oil and gas and other minerals are entitled to a depletion allowance deduction on their federal income tax in proportion to their respective interests in the property (26 USC 611 *et seq.*).

4. Taxation — Single Business Tax Act.

The Single Business Tax Act is designed to tax what a business has added to the economy, in contrast to an income tax, which taxes what one has derived from the economy (MCL 208.1 *et seq.*; MSA 7.558[1] *et seq.*).

5. Taxation — Single Business Tax Act.

The Single Business Tax Act taxes the user of capital, not the investor (MCL 208.1 *et seq.*; MSA 7.558[1] *et seq.*).

6. Taxation — Oil and Gas Leases — Royalties.

Royalty payments under an oil and gas lease are not payments for the purchase of the oil and gas produced; rather, they are payments for the privilege of exploiting the land which is the subject of the lease.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Peter S. Sheldon),* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Curtis G. Beck,* Assistants Attorney General, for respondent.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and J. E. McDONALD,* JJ.

PER CURIAM. Petitioner appeals as of right from a decision of the Michigan Tax Tribunal finding petitioner liable for a single business tax deficiency of $77,705.

The issue raised in the tribunal involved payments made by petitioner to landowners in connection with the production of oil and gas by petitioner from wells on the landowners' property. It does not involve the initial payments made by the petitioner for the right to explore the property. The case was presented to the tribunal pursuant to a stipulation of facts entered into by the parties. The pertinent provisions thereof provide as follows:

"9. When oil or gas is produced from a well covered by an oil and gas lease of the sort represented by the attached Exhibit A, the nonoperating owner of the premises (therein denominated as 'Lessor'), is entitled either to retain his one-eighth share of such production, in kind, or to sell same to Petitioner or to anyone else.

"10. If the nonoperating owner of the premises covered by a producing oil or gas well elects to sell his one-eighth share of production to Petitioner, Petitioner accounts on its books and records for the transaction by debiting an account entitled 'Purchases Outside' and by crediting an account entitled 'Accounts Payable-Roy-

* Circuit judge, sitting on the Court of Appeals by assignment.

alty.' Then, when the account payable represented by the above entry is liquidated by payment to the nonoperating owner, Mobil Oil Corporation, on its books and records, records that transaction by debiting 'Accounts Payable-Royalty' and by crediting 'Cash.'

"11. If, at the close of an accounting period, the oil purchased by Petitioner from the nonoperating owner is not sold by Petitioner, it is included on Petitioner's books and records as an asset account *inventory.*

"12. At the close of an accounting period, if the oil purchased by Petitioner from the nonoperating owner has been sold by Petitioner, an entry is made on the books and records of Petitioner so as to reduce inventory and increase cost of goods sold.

"13. For the fiscal year of Petitioner during which it makes the entry identified in paragraph 12 above (a debit to cost of goods sold and a credit to inventory), a deduction on Petitioner's federal income tax return is taken so as to reflect the extent of its cost of goods sold.

"14. Petitioner is not required to include in its income any portion of the nonoperating owner's one-eighth interest in oil or gas produced on property covered by oil and gas leases of the sort attached hereto as Exhibit A, nor is Mobil Oil Corporation permitted to record, as a business expense, the account payable to the nonoperating owner until such time as the oil or gas inventory giving rise to such account payable is converted into an expense item by becoming a part of cost of goods sold.

"15. The parties stipulate and agree that Petitioner shall be entitled to prevail in connection with the $77,705 sum in dispute hereunder if:

"(a) Payments made by Petitioner to nonoperating owners of premises covered by oil and gas leases of the sort described in the attached Exhibit A are not 'royalties' as the meaning of that term is intended in Section 9(4)(g) of the Single Business Tax Act; or

"(b) Payments made by Petitioner to nonoperating owners of premises covered by oil and gas leases of the sort described in the attached Exhibit A are not 'deducted in arriving at (Petitioner's) federal taxable in-

come,' as the meaning of that clause is intended in Section 9(4)(g) of the Single Business Tax Act."

The tribunal found that the payments involved are "royalties", as that term is used in MCL 208.9(4)(g); MSA 7.558(9)(4)(g), and that they were deducted by petitioner in arriving at its federal taxable income. Therefore, it ruled that petitioner was required to add the amounts thus deducted to its tax base in determining its single business tax liability.

The Single Business Tax Act (SBTA) provides for a specific tax of 2.35% on the adjusted tax base of every person with business activity within the state that is allocated or apportioned to this state. MCL 208.31; MSA 7.558(31). The base is computed by adding to federal taxable income certain items which were previously deducted, and by then subtracting certain items which were included in federal taxable income. MCL 208.3(3); MSA 7.558(3)(3); MCL 208.9; MSA 7.558(9); *Stockler v Dep't of Treasury,* 75 Mich App 640; 255 NW2d 718 (1977), *lv den* 402 Mich 802 (1977), *app dis* 435 US 963; 98 S Ct 1598; 56 L Ed 2d 54 (1978).

The items which are deducted from federal taxable income that must be added back to determine the tax base for SBTA purposes include:

"(4) Add, to the extent deducted in arriving at federal taxable income:

\*     \*     \*

"(g) *All royalties."*

MCL 208.9(4)(g); MSA 7.558(9)(4)(g). (Emphasis added.)

The items which are included in federal taxable income that must be deducted to determine the tax base for SBTA purposes are the following:

"(7) Deduct, to the extent included in arriving at federal taxable income:

\* \* \*

"(c) *All royalties.* "

MCL 208.9(7)(c); MSA 7.558(9)(7)(c). (Emphasis added.)

Certain deductions and exemptions are then subtracted from the tax base to arrive at the adjusted tax base. MCL 208.23; MSA 7.558(23); MCL 208.35; MSA 7.558(35).

Petitioner claimed that the amounts it pays to nonoperating owners of property in connection with the production of oil and gas are not "royalties", as the term is used in the SBTA. The tribunal found as follows:

"As to petitioner's first contention, this tribunal is not persuaded that the payments involved herein are not royalties. As respondent pointed out in its brief, the payments made are categorized as 'royalty' payments both on petitioner's books and are considered as such in the common parlance of the oil and gas industry. [See *Alexander v King* 46 F2d 235 (CA 10, 1931); 74 ALR 174, *cert den* 283 US 845; 51 S Ct 492; 75 [L Ed] 1455 (1931); 38 Am Jur 2d, p 670, § 189.]

"Regardless of how these payments are characterized by petitioner, they are considered to be 'royalties' at the federal level and are used in comparable context in the laws of the United States relating to federal income taxes and thus have the same meaning for purposes of the Single Business Tax. It makes no difference whether these 'royalties' are deducted or excluded from gross income, they are still 'royalties'. Further, quoting from *Patrick and Michael Eyde v Lansing Charter Twp,* Court of Appeals Docket No. 52221 (1981):

" 'In interpreting statutes, every word should be given meaning and no word should be treated as surplusage if at all possible. *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971). When certain things are

specified in a law, the intention to exclude all others from its operation may be inferred. *Wolverine Steel Co v Detroit,* 45 Mich App 671; 207 NW2d 194 (1973).'

"When reading § 9(4)(g) and applying the above criteria, it is clear that since the Legislature used the word 'all', they intended to include every type of royalty."

The term "royalties" is not defined in the SBTA. However, § 2 of the act provides in part the following:

"(2) A term used in this act and not defined differently shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required. A reference in this act to the internal revenue code includes other provisions of the laws of the United States relating to federal income taxes." MCL 208.2(2); MSA 7.558(2)(2).

It is clear that under § 162 of the federal income tax, 26 USC 162, the payments made by petitioner did constitute royalties. Although the term "royalties" is not defined in § 162, petitioner concedes that the courts have universally held that the one-eighth share paid by the operating lessee to nonoperating owners in connection with the production of oil and gas and other minerals from the property of such landowners is considered to be a "royalty" for federal income tax purposes. *Anderson v Helvering,* 310 US 404; 60 S Ct 952, 955; 84 L Ed 1277 (1940). See also *Barry v Frizzell,* 371 P2d 460, 464 (Okla, 1962); *Delta Drilling Co v Simmons,* 325 SW2d 222, 226 (Tex, 1959). See also Anno: *What constitutes oil or gas "royalty", or "royalties", within language of conveyance, exception, reservation, devise, or assignment,* 4 ALR2d 492. Michigan courts have also included the sort of

payments involved here within the definition of "royalties". *People v Blankenship,* 305 Mich 79, 86; 8 NW2d 919 (1943). It is well established that where a term has a well-defined meaning at the time of a legislative enactment, it is presumed that in using such term in the statute, the Legislature intended that meaning to be employed. *Thomas v Dep't of State Highways,* 398 Mich 1, 9; 247 NW2d 530 (1976).

Petitioner contends that even if these payments were "royalties", as the term is used in the federal act, they are not "royalties", as that term is used in § 9 of the SBTA. It contends that because royalties paid by lessees under oil and gas leases are exclusions from income under the federal act, as opposed to deductions, 26 USC 613, and since the SBTA provides that royalties paid are to be added back to the taxpayer's tax base only to the extent that they were deducted in determining the taxpayer's federal taxable income, the Michigan Legislature did not intend that such payments be considered "royalties" under the SBTA. For purposes of determining a taxpayer's adjusted gross income for federal income tax purposes, such payments constitute deductible trade or business expenses within the meaning of § 162 of the Internal Revenue Code. 26 USC 162. In fact, petitioner admits in the stipulated statement of facts that such payments are included in the cost of goods sold and that such payments are deducted for federal income tax purposes. Section 613 of the Internal Revenue Code, 26 USC 613, provides that, for purposes of determining the amount of the oil depletion allowance deduction under § 611, 26 USC 611, amounts paid by the taxpayer for rent and royalties for the property are to be excluded from the taxpayer's gross income. The reason for such

exclusion is that the depletion allowance deduction is computed by reference to the taxpayer's gross income. Furthermore, under the Internal Revenue Code, both the lessee and the lessor are entitled to a depletion allowance deduction in proportion to their respective interests in the property. See *Engle v Comm'r of Internal Revenue,* 677 F2d 594 (CA 7, 1982); 26 USC 611 *et seq.* If the lessee were not required to exclude the amount of royalty payments made to the lessor from its gross income before computing the amount of its depletion allowance deduction, the amount thus deducted would include a depletion allowance for the interest retained by the lessor. Therefore, since it appears that the "exclusion" operates only for the purpose of computing the taxpayer's oil depletion allowance deduction and it is clear that such payments are otherwise treated as deductions for purposes of computing the taxpayer's federal income tax liability, petitioner's argument is rejected.

Petitioner contends that the term "royalty", as used in the federal act, is not used in a context comparable to its use in the SBTA. It contends that the type of tax created by the SBTA was not intended to tax the sort of payments involved here.

The SBTA is designed to tax what a business has added to the economy, in contrast to an income tax, which taxes what one has derived from the economy. *Stocker v Dep't of Treasury, supra.* Therefore, the act requires that, in computing its tax base for SBTA purposes, the taxpayer must add to its federal taxable income the value of the labor it employs, § 9(5), and the value of the capital it uses, § 9, subsections (3) and (4). The SBTA is essentially a value-added tax. *Stockler, supra.*

Therefore, as petitioner correctly points out, the SBTA taxes the user of capital, not the investor.

Petitioner contends that in effect it is merely a purchaser of oil and gas from its lessors. Therefore, it claims it is not a user of such products until the products are refined and sold and then only to the extent that it has added a value to the products. Therefore, it contends that, to the extent of the royalty payments, it is not a user of capital. Consequently, it claims that such payments should not be added to its tax base for purposes of determining its SBTA liability. However, petitioner's contention was rejected by the United States Supreme Court in *Burnet v Harmel,* 287 US 103; 53 S Ct 74; 77 L Ed 199 (1932). In *Burnet,* the taxpayers were lessors who executed oil and gas leases and retained therein the right to receive stipulated royalties measured by the amount of oil and gas produced by the lessees. The taxpayers claimed that the royalties received constituted the sale of the oil and gas produced and that the amounts they received from such sales should be treated as capital gains. In rejecting that contention, the Court stated:

"Moreover, the statute speaks of a 'sale,' and these leases would not generally be described as a 'sale' of the mineral content of the soil, using the term either in its technical sense or as it is commonly understood. Nor would the payments made by lessee to lessor generally be denominated the purchase price of the oil and gas. By virtue of the lease, the lessee acquires the privilege of exploiting the land for the production of oil and gas for a prescribed period; he may explore, drill, and produce oil and gas if found. Such operations with respect to a mine have been said to resemble a manufacturing business carried on by the use of the soil, to which the passing of title of the minerals is but an incident, rather than a sale of the land or of any

interest in it or in its mineral content. *Stratton's Independence v Howbert,* 231 US 399, 414, 415 [34 S Ct 136; 58 L Ed 285 (1913)]; see *Von Baumbach v Sargent Land Co,* 242 US 503, 521 [37 S Ct 201; 61 L Ed 460 (1917)]." 287 US 107.

It is clear from the foregoing that petitioner's argument is without merit. Royalty payments under an oil and gas lease are not payments for the purchase of the oil and gas produced. Rather, they are payments for the privilege of exploiting the land which is the subject of the lease. Although land is not technically a capital asset, it is clear that the imposition of SBTA liability with respect to such royalty payments has the effect of taxing the user of such land and is entirely consistent with the concept of the SBTA as a value-added tax. It taxes what petitioner has added to the economy rather than what it has derived. Such a conclusion is further supported by § 9(4)(c) of the SBTA, which requires the taxpayer to add depreciation expense to its tax base to the extent the taxpayer deducted such expense for the purposes of determining its federal taxable income. Since land is not a depreciable asset, *Burnet v Harmel, supra,* the Legislature may well have included SBTA § 9(4)(g) to insure that businesses which cause the value of real property to be depleted in connection with the use of the same be taxed in the same manner and to the same extent as other businesses whose operations involve the utilization of more traditional forms of capital assets.

Therefore, we hold that the term "royalties" as used in the federal act is used in a context comparable to its use in the SBTA and, further, that payments made by petitioner to nonoperating landowners in connection with the production of oil and gas from property owned by the landown-

ers are "royalties" as that term is used in § 9 of the SBTA.

Petitioner argues that the payments made by petitioner were not deducted by petitioner in arriving at its federal taxable income. When the oil and gas were extracted from the ground, petitioner debited a purchase account and credited accounts payable. When payments were made to the landowners, petitioner's accounts payable was debited and its cash account was credited. Only when the oil and gas were actually sold by petitioner was a debit made to the cash account and a credit to the inventory account. It was at that point that the cost of goods sold was calculated. It is in connection with the cost of goods sold that the petitioner makes a deduction for federal income tax purposes.

This argument is completely devoid of merit. Petitioner contends that, because royalty payments may not be deducted by it until it sells the oil for which the royalty payments are made and since the federal income tax deduction is then taken, its royalty payments were not deducted in arriving at its federal taxable income. The difficulty with such argument is that whether the deduction is taken directly as a royalty expense or indirectly by including such expense in petitioner's income statement in determining its cost of goods sold, petitioner does deduct the amounts of royalty it pays for purposes of calculating its federal taxable income.

Petitioner cites no authority in support of its position that it should be permitted to avoid the requirements of the SBTA merely by virtue of its accounting procedures. Furthermore, as noted in the discussion above, royalty payments made in connection with the extraction of oil and gas pur-

suant to an oil and gas lease are not considered to be payments for the purchase of such oil and gas. *Burnet v Harmel, supra.* Therefore, petitioner cannot legitimately include such payments as part of the cost of goods sold. In any event, since petitioner admits that such payments were deducted by it in determining its federal taxable income, albeit indirectly, the Court rejects petitioner's argument.

The decision of the Tax Tribunal is affirmed.