PAPROCKI v JACKSON COUNTY CLERK

Docket No. 76931. Submitted February 14, 1985, at Lansing.—Decided
May 8, 1985.

Plaintiff, Terry D. Paprocki, an inmate at the State Prison for
Southern Michigan in Jackson County, made written requests,
pursuant to the Michigan Freedom of Information Act (FOIA),
of the Troy Police Department and the County of Oakland for
records contained in his file. His requests were rejected. Plain-
tiff then filed a complaint for judicial review in the Jackson
Circuit Court against the Troy Police Department and Oakland
County. The Deputy County Clerk advised the plaintiff that he
was unable to file the complaint in Jackson County and that
plaintiff would have to file it in the county in which he lives.
Plaintiff then filed a complaint for mandamus against the
Jackson County Clerk seeking to have the circuit court judge
order the clerk to accept the complaint for filing. The circuit
court, James G. Fleming, J., advised the plaintiff by letter that
proper venue for the action was in Oakland County Circuit
Court. Plaintiff then filed a complaint for superintending con-
trol in the Court of Appeals. The Court of Appeals treated the
complaint as a delayed application for leave to appeal and
granted leave to appeal. *Held:*

The word "resides", as used in § 10 of the FOIA, refers to the
place where the person last lived before being sent to prison.
"Resides" as used in the FOIA must be interpreted to mean a
person's legal residence. As applied to prisoners, the Legisla-
ture intended the word "reside" to refer to the prisoner's
domicile at the time of the prisoner's incarceration. The circuit
court for Jackson County did not err in refusing to file plain-
tiff's complaint for mandamus.

Affirmed.

1. RECORDS — FREEDOM OF INFORMATION ACT — RESIDES — PRISONS
AND PRISONERS — JUDICIAL CONSTRUCTION.
The term "resides" as used in the Michigan Freedom of Informa-

REFERENCES FOR POINTS IN HEADNOTES
[1] 66 Am Jur 2d, Records and Recording Laws § 32 *et seq.*
[2] 73 Am Jur 2d, Statutes §§ 145, 146.

tion Act section regarding jurisdiction of actions to compel disclosure of public records refers, when applied to a prisoner, to the place where the prisoner last lived before being sent to prison; "resides" as used in the act, when applied to a prisoner, must be interpreted to mean a person's legal residence or domicile at the time of his incarceration (MCL 15.240[1]; MSA 4.1801[10][1]).

2. STATUTES — JUDICIAL CONSTRUCTION.

The Legislature is presumed to have used words which have been subject to judicial interpretation in the sense in which they have been interpreted; it is presumed that the Legislature in using a term which has a well-defined meaning at the time of a legislative enactment intended that meaning to be employed; words and phrases which have acquired a technical meaning in the law are construed according to that meaning when they appear in a statute.

Terry D. Paprocki, *in propria persona.*

*Edward J. Grant,* Prosecuting Attorney, and *Joseph A. Greenleaf,* Chief Appellate Attorney, for defendants.

Before: D. E. HOLBROOK, JR., P.J., and ALLEN and E. M. THOMAS,* JJ.

PER CURIAM. In this matter of first impression, we are asked to decide whether under § 10(1) of the Michigan Freedom of Information Act (FOIA), MCL 15.240(1); MSA 4.1801(10)(1), a prisoner in the State Prison of Southern Michigan in Jackson County is, as a matter of law, a resident of Jackson County or is a resident of the last county in which he resided before he was imprisoned. Section 10(1) provides in relevant part:

"If a public body makes a final determination to deny a request or a portion thereof, the requesting person may commence an action in the circuit court to compel

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

disclosure of the public records. If the court determines that the public records are not exempt from disclosure, the court shall order the public body to cease withholding or to produce a public record or a portion thereof wrongfully withheld, regardless of the location of the public record. *The circuit court for the county in which the complainant resides* or has his principal place of business, or the circuit court for the county in which the public record or an office of the public body is located *shall have jurisdiction to issue the order."* (Emphasis added.)

Pursuant to the FOIA, the plaintiff, an inmate at the State Prison for Southern Michigan in Jackson County, made written requests of the Troy Police Department and the County of Oakland for records contained in his file. His requests were rejected and on January 10, 1984, plaintiff filed a complaint for judicial review in the circuit court for Jackson County against the Troy Police Department and the County of Oakland. By letter from the Deputy County Clerk he was advised: "We are unable to file your complaint in our county. You'll have to file it in the county in which the defendant lives."

On January 31, 1984, plaintiff filed a complaint for mandamus against the Jackson County Clerk. The relief sought was to have the circuit judge order the clerk to accept the January 10th complaint for filing. On February 4, Jackson Circuit Court Judge James Fleming advised plaintiff by letter as follows:

"The court clerk has advised me that you seek to file a civil action against the County of Oakland and the Troy, Michigan Police Department.

"The proper venue for such an action is the Oakland County Circuit Court, not Jackson County.

"If your suit is filed here it would be subject to

dismissal later by a judge on the basis of improper venue.

"If you so indicate, I will inform the clerk to return your suit papers so that you can send them to Oakland County to file."

On March 5, 1984, plaintiff filed a complaint for superintending control. This Court treated the complaint as a delayed application for leave to appeal and on July 27, 1984, ordered leave granted. Complaints by other prisoners at Jackson Prison involving the identical issue are currently pending on appeal to this Court.[1] The issue is whether inmates at the State Prison for Southern Michigan are Jackson County residents for purposes of suit under the FOIA. If they are not, inmates will be required to file their civil suits in their "home" counties. The answer to the issue raised depends upon the meaning of the term "resides" in § 10(1) of the FOIA quoted above.

In *Kubiak v Steen,* 51 Mich App 408; 215 NW2d 195 (1974), this Court held that the word "resides" may have two different meanings. In its "popular" sense "resides" means no more than actual physical presence, the place where one eats and sleeps, regardless of whether one intends to make that place a permanent residence. In its "legal" or technical sense "resides"

" '* * * means legal residence; legal domicile, or the home of a person in contemplation of law; the place where a person is deemed in law to live, which may not always be the place of his actual dwelling, and thus the term may mean something different from being bodily present, and does not necessarily refer to the place of actual abode.' " *Id.,* 413.

At common law, any place of abode or dwelling,

---

[1] *Curry v Jackson Circuit Court* (Docket #71772); *Grasfeder v Jackson Circuit Judge* (Docket #76163).

however temporary it might have been, was said to constitute a residence. *Gluc v Klein,* 226 Mich 175; 197 NW 691 (1924). Further, *Oakland County Taxpayers' League v Oakland County Supervisors,* 355 Mich 305; 95 NW2d 875 (1959), held that employees of a state infirmary and juvenile home, who lived at the institutions as part of their employment, acquired residence in that county for purposes of voting. Those authorities tend to support plaintiff's position here that he is a resident of Jackson County while he is incarcerated there.

On the other hand, there are numerous indications that involuntary confinement in a state institution does not establish residence at the place of confinement. Residing behind bars is hardly the kind of living which is ordinarily encompassed within the term "resides" even in the "popular" sense. See, for example, *In re Scheyer's Estate,* 336 Mich 645; 59 NW2d 33 (1953); *Reaume & Silloway, Inc v Tetzlaff,* 315 Mich 95; 23 NW2d 219 (1946); *Wright v Genesee Circuit Judge,* 117 Mich 244; 75 NW 465 (1898). The fact that the inmate ordinarily does not have an intention to remain in the institution also argues against the establishment of residency at the institution. See, for example, *Leader v Leader,* 73 Mich App 276; 251 NW2d 288 (1977); *Grable v Detroit,* 48 Mich App 368; 210 NW2d 379 (1973). These authorities support defendants' position that suit in the instant case should have been started in Oakland County.

Although the question is admittedly close, we believe that as used in § 10 of the FOIA, the word "resides" refers to the place where a prisoner last lived before being sent to prison. We reach this conclusion on several grounds. The principal case supporting plaintiff's position, *viz: Kubiak v Steen, supra,* concerned the propriety of a change of *venue* under GCR 1963, 404. Here, by express

wording of the statute, the question is one of *jurisdiction.* When used in statutes conferring jurisdiction on a particular court to hear an action, "resides" has been interpreted as meaning the same as "domicile". See, *e.g., Leader, supra* (jurisdiction to grant a divorce); *In re Fox Estate,* 3 Mich App 501, 507; 142 NW2d 866 (1966) (jurisdiction to probate a will). Since § 10 of the FOIA provides that the circuit court where the complainant "resides" shall have jurisdiction to hear FOIA complaints, we are persuaded that "resides" as used in the FOIA must be interpreted to mean a person's legal residence.

Likewise, with respect to residency for voting purposes, the Legislature has expressly provided that a prison inmate does not lose his civilian residence because of incarceration. MCL 168.11(2); MSA 6.1011(2) provides in part that:

"An elector shall not be deemed to have gained or lost a residence * * * while confined in a jail or prison."

Even an absence of many years does not destroy residency, at least for voting purposes. *Harbaugh v Cicott,* 33 Mich 241 (1876). Finally, 1 Restatement Conflict of Laws, 2d, § 17(c), p 66 provides:

"Under the rule of this Section, it is impossible for a person to acquire a domicile in the jail in which he is incarcerated. To enter jail, one must first be legally committed and thereby lose all power of choice over the place of one's abode."

The rationale for the above rule from § 17 of the Restatement is that some free exercise of will is required to acquire domicile and free choice is impossible when one is confined against his will. Over the years this proposition hardened into an irrevocable presumption. *Jones v Hadican,* 552 F2d

249 (CA 8, 1977). Although there has been some softening of the rule in recent years,[2] no Michigan case has yet supported any proposition other than that one who is in a place solely by virtue of superior force exerted by another should not be held to have abandoned his former domicile. Indeed, it has been written that "[r]esidence in a place by constraint, or involuntarily, will not give the party a domicile there; but his antecedent domicile remains." Hogan, *Joseph Story's Essay on "Domicile",* 35 BUL Rev 215, 221 (1955). See Restatement, *supra.*

The FOIA was enacted in 1976 and made effective April 13, 1977. At that time the above principle of law, that a prisoner does not acquire a domicile in the jail in which he is incarcerated, but instead, his antecedent domicile remains, was a well-established rule of law. The Legislature is presumed to have used words which have been subject to judicial interpretation in the sense in which they have been interpreted. *Groth v Stillson,* 20 Mich App 704, 707; 174 NW2d 596 (1969). It is presumed that the Legislature in using a term which has a well-defined meaning at the time of a legislative enactment intended that meaning to be employed. *Mobil Oil Corp v Dep't of Treasury,* 121 Mich App 293, 300; 328 NW2d 367 (1982). Words and phrases which have acquired a technical meaning in the law are construed according to that meaning when they appear in the statutes. MCL 8.3a; MSA 2.212(1); *Thomas v Dep't of State Highways,* 398 Mich 1, 9-10; 247 NW2d 530 (1976). Accordingly, we conclude that, as applied to prisoners, the Legislature intended the word "resides" to refer to the prisoner's domicile at the time of the prisoner's incarceration.

---

[2] *Stifel v Hopkins,* 477 F2d 1116 (CA 6, 1973); *Dane v Bd of Registrars of Voters of Concord,* 374 Mass 152; 371 NE2d 1358 (1978); *McKenna v McKenna,* 282 Pa Super 45; 422 A2d 668 (1980).

We are also struck by the immensity of the practical problem which would flow from a contrary holding. If, for FOIA purposes, prisoners are deemed as a matter of law to "reside" in the place where they are incarcerated, then the circuit courts for Jackson and Marquette Counties will be overwhelmed with suits for enforcement of alleged FOIA violations. We very much doubt that the Legislature intended this result. Instead, we believe the Legislature intended that such suits be spread among the several counties where the prisoners resided at the time of their incarceration.

For the foregoing reasons we hold that the trial court did not err in refusing to file plaintiff's complaint for mandamus.

Affirmed. No costs.