JOHN DEERE COMPANY *v* WONDER-
LAND REALTY CORPORATION

1. SECURED TRANSACTIONS—AGREEMENT—RIGHTS CREATED.
    The determination of whether an agreement is a security interest
    or a lease is not restricted to how the agreement is labeled or
    its form; the determination must be based on an examination
    of the entire instrument and the ascertainment of its intent
    and the rights created by it (MCLA 440.1201[37]).

2. SECURED TRANSACTIONS—AGREEMENT—CONSTRUCTION.
    An agreement, even though labeled a lease, created a security
    interest where the terms of the agreement gave the "lessee"
    the following rights:     (a) on compliance with its terms the
    "lessee" would become the owner of the personal property
    involved for no more consideration than the total rental charge,
    (b) the "lessee" had an option to sell the property and retain
    the proceeds in excess of the unpaid total rental charge, (c)
    at a sale the "lessee" could bid as high as necessary to be-
    come the successful bidder and yet never be obligated to pay
    more than the total rental charge, and (d) upon default by
    the "lessee", the "lessor" could accept the property in final
    settlement or sell it and hold the "lessee" for any deficiency
    in the amount of rental charge unpaid (MCLA 440.1201[37]).

Appeal from Ingham, Ray C. Hotchkiss, J.   Sub-
mitted Division 2 December 14, 1971, at Lansing.
(Docket No. 11971.)   Decided January 21, 1972.

Complaint by John Deere Company against Won-
derland Realty Corporation, Edward O. Webb,

REFERENCES FOR POINTS IN HEADNOTES
[1] 15 Am Jur 2d, Commercial Code § 55.
[2] 15 Am Jur 2d, Commercial Code §§ 49, 50, 52.

Sheriff of Hillsdale County, and Floren Klopfenstein to forestall the sale of equipment pursuant to the defendant Wonderland's levy of execution on the property in the possession of Floren Klopfenstein, and to determine the priorities of the plaintiff and defendant Wonderland in the property. Judgment for plaintiff. Defendant Wonderland appeals. Reversed and remanded.

*Foster, Lindemer, Swift & Collins* (by *David C. Coey* and *Philip T. Carter*), for plaintiff.

*MacLean, Seaman, Laing & Guilford,* for defendant Wonderland Realty Corporation.

Before: Quinn, P. J., and J. H. Gillis and Van Valkenburg,* JJ.

Quinn, P. J. This action was submitted to the trial court for decision on stipulated facts, stipulated issues, and briefs. Plaintiff had judgment and defendant Wonderland Realty Corporation appeals.

The facts stipulated are:

"1. On July 29, 1965, at Fort Wayne, Indiana, Floren Klopfenstein, as lessee, and A. H. Heine Implement Company, as lessor, executed a certain 'equipment lease' a copy of which is attached hereto as Exhibit 1. The subject of said lease was two (2) John Deere 5010 scrapers (which is a large tractor with a built-on scraper blade) and two other items of earth moving equipment. At the time of the execution of the lease the equipment was located in Fort Wayne, Indiana, and shortly thereafter it was delivered by lessor to lessee at Paulding, Ohio.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"2. On August 5, 1965, the said lease was assigned to plaintiff, John Deere Company. Neither A. H. Heine Implement Company nor John Deere Company knew or consented to the later removal of said equipment to Michigan. The lease agreement was never the subject of a filing or recording in any state.

"3. On September 12, 1967, defendant, Wonderland Realty Corporation, as a judgment creditor of Floren Klopfenstein (Ingham County Circuit Civil Action No. 6400-C) executed and levied against the two John Deere 5010 scrapers and the John Deere 1010 back hoe, which equipment was then in the possession of Floren Klopfenstein in Hillsdale County, Michigan.

"4. The instant action was brought by the plaintiff to forestall sale of said equipment pursuant to defendant Wonderland's levy of execution and to determine the respective priority of the parties' interests in said agreement. By agreement of the parties, the equipment was valued at sixteen thousand five hundred ($16,500) dollars, which figure is substituted herein for said equipment. The agreement of the parties with respect to sale and substitution and the terms of judgment to be rendered herein is attached hereto and made a part hereof as Exhibit 2." (A copy of the "equipment lease" is attached hereto.)**

The first stipulated issue was:

"Does the 'equipment lease' constitute a 'security agreement' under the law applicable to it?"

On the basis of a finding that the instrument involved was a lease, and not a security agreement, the trial court decided for plaintiff. We reverse because in our opinion the instrument was a security agreement.

MCLA 440.1201(37); MSA 19.1201(37) provides:

---

** Appendix.—REPORTER.

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation.  *  *  *  Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest' but a consignment is in any event subject to the provisions on consignment sales (section 2326).   Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

We refer to the "equipment lease" as the agreement.   Neither its label nor its form determines what the agreement is.   That determination results from an examination of the entire instrument and the ascertainment of its intent and the rights created by it.

For a term of 36 months, the so-called lessee was required to pay what is termed rental of $60,592.68, payable $5,049.39 at three month intervals or $20,-197.56 annually (paragraph 1 of the agreement). The lessee could extend the term for succeeding 12 month periods at an annual rental of $1,211.85 (paragraph 3 of the agreement).   At the end of the term, lessee had an option to sell the equipment as provided in paragraph 8 of the agreement with final settlement to be made as provided in paragraph 9 of the agreement (paragraph 4 of the agreement). An examination of paragraphs 8 and 9 establishes that any proceeds of sale in excess of the present value of the payments provided in paragraph 1 and

remaining unpaid went to the lessee.[1] At a sale, lessee could bid as high as was necessary to become the successful bidder and never pay more than he was obligated to pay under paragraph 1 of the agreement.

On termination by the lessee under paragraph 8 of the agreement, the same result is reached, namely: the lessee pays the present value of unpaid payments required by paragraph 1.

In the event of default by lessee, he agrees to surrender possession of the equipment to lessor. The latter may accept the equipment in final settlement or sell it and hold lessee for any deficiency of the amount due under paragraph 1 (paragraph 10 of the agreement).

All of the foregoing analyses connote a security interest retained by lessor to secure payment of lessee's obligation under the agreement. On compliance with the terms of the agreement, it permits lessee to become the owner of the equipment for no additional consideration. The agreement was a security agreement and not a lease.

Because of its decision on the first issue, the trial court never reached the remaining issues. We decline to consider them before the trial court has decided them.

Reversed and remanded with costs to defendant Wonderland Realty.

All concurred.

---

[1] We note that at the time of levy by defendant the parties valued three pieces of equipment at $16,500, a figure which appears to be the present value of the unpaid payments under the agreement for three pieces of equipment.

## *APPENDIX*
## EQUIPMENT LEASE

| LESSOR: | LESSEE: |
|---|---|
| A. H. Heine Imp. Co. | Floren Klopfenstein |
| (Name) | (Name) |
| Ft. Wayne, Ind. | Paulding, Ohio, RR #2 |
| (Mailing Address) | (Mailing Address) |
| (City)    (State or Province) | (City)        (State or Province) |

DESCRIPTION OF UNITS (Give Serial No.)

1 John Deere Model 5010 Scraper #37T6864
1 John Deere Model 5010 Scraper #373R008227
1 John Deere Model 1010 Wheel loader #56786
1 John Deere Model 92 Backhoe #422

**1. TERM; RENTAL**

Lessor hereby leases the above units to Lessee for a term of 36 months from the date of this lease. A rental payment of $5049.39, shall be made at the beginning of each 3 month portion of the above stated term for a total of 12 rental payments. Advance rentals of $5049.39, receipt whereof is hereby acknowledged, shall be applied to the first rental period and any excess applied to the last rental period(s).

**2. ASSIGNMENT BY LESSOR**

Lessee agrees that Lessor may assign this lease and all right, title and interest of Lessor in and to the units and all rents due or to become due hereunder, of which assignment Lessee hereby waives notice. Lessee's obligation to pay rent under this lease shall not as to any such assignee be subject to any diminution arising out of any breach of any obligation hereunder or other liability of Lessor to Lessee. The Lessor, or an assignee claiming under him as the case may be, is sometimes referred to herein as the "Owner." Lessee will not sublease units or assign any of his rights hereunder.

**3. RENEWAL OR EXTENSION**

If Lessee is not in default in performance of any of its obligations hereunder, Lessee may by thirty days' written notice to the Owner prior to the expiration hereof, or any renewed or extended period, elect to renew or extend this lease for succeeding twelve month periods, provided, however, that Lessee shall pay to the Owner for each such renewal an annual rental in advance equaling 2% of the aggregate rentals otherwise payable hereunder, and all the provisions of this lease shall apply, except as otherwise specifically provided herein or in any subsequent agreement of the parties.

## 4. EXPIRATION OF TERM; RETURN OF UNITS

At the expiration of the term of the lease or any renewal thereof without further renewal, Lessee shall return all units to the Owner at a place designated by the Owner no more than fifty miles from the place where the units were originally leased. It is provided, however, that Lessee in lieu of returning any unit may, by written notice to Owner, elect that the unit shall be sold as provided in Section 8 and final settlement made as provided in Section 9.

## 5. WARRANTY

Except as provided below, Lessor will replace parts which prove defective within six months of the date of this lease with normal and proper use provided Lessee delivers the unit to Lessor's service shop or reimburses Lessor for travel or transportation expense. Except as provided below as to agricultural shovels and sweeps, Lessor makes no other warranty or representation and has no other obligation with respect to the units, their condition, merchantability, or performance. Lessee agrees that the units are of a size, design and capacity selected by him, and is satisfied that the units are suitable for his purpose. Lessor has no obligation of any kind as to batteries and rubber tires and non-John Deere goods, as to all of which Lessee agrees to look solely to the written warranty, if any, undertaken by the manufacturer thereof which is hereby assigned by Lessor to Lessee. Lessor undertakes no warranty or obligation of any kind as to second-hand goods.

Lessor guarantees John Deere agricultural shovels and sweeps against breakage of any kind when such breakage occurs before any appreciable wear takes place.

## 6. INSURANCE

Lessee at its own expense will carry public liability insurance in amounts satisfactory to the Owner against bodily injury, including death, and against property damage, and will keep the units insured at its full insurable value under standard inland marine "all risk" type physical damage policy with maximum deductibility of $50, all with companies satisfactory to Owner. Lessee shall deliver to the Owner the insurance policies or certificates or other evidence satisfactory to the Owner of the maintenance of the above insurance. All insurance shall contain an agreement of the insuring company not to cancel the same without at least ten days' notice to the Owner.

## 7. LOSS OR DAMAGE TO UNITS

All risk of loss or damage to the units is assumed by Lessee until their return to the Owner at the expiration of the lease or renewal thereof, or until final settlement has been made pursuant to Section 9. If a damaged unit is capable of being repaired, Lessee shall repair it at his cost and may apply insurance proceeds for this purpose, but inadequacy of such proceeds to cover the cost does not excuse or diminish Lessee's obligation to repair. If a unit is damaged beyond repair, insurance proceeds shall be paid over to the Owner and the wreckage sold pursuant to Section 8 below.

## 8. TERMINATION OF LEASE; SALE OF UNITS

At any time after the first twelve months of the lease term, Lessee may by written notice to the Owner terminate this lease with re-

spect to any unit. In such event, or in the event of damage to the unit beyond repair under Section 7 above, Lessee shall promply arrange to sell the unit by bona fide sale in the open market. Such sale is subject to prior written approval of the Owner and all proceeds of such sale after deduction of expenses incurred by Lessee in connection therewith shall be delivered to the Owner. At its option the Owner may elect to take possession of the unit and handle the sale itself.

### 9. FINAL SETTLEMENT

Upon receipt by the Owner of the proceeds of any unit sold pursuant to Section 8 or 10 or the proceeds of any insurance pursuant to Section 7, the Owner will adjust the rental payable hereunder by returning to Lessee the amount by which such proceeds exceed the present value of rentals provided for in Section 1 remaining unpaid plus any obligation of Lessee under Section 12 hereof. The present value of future due rental will be computed on the basis of discount rates taken from the John Deere Finance Chart. If such proceeds are less than such present value of rentals, plus such obligation, Lessee shall pay such difference promptly on demand.

### 10. DEFAULT

If Lessee shall fail to make any rental payment when due, shall attempt to sell or encumber the units, shall cease operating, shall institute or have instituted against him proceedings under any bankruptcy or insolvency law, shall make an assignment for the benefit of creditors, or shall fail to comply with any other provision of this lease, or if any attachment, execution, writ, etc., or other process is levied against the units or any of Lessee's property, or if for any reason the Owner deems itself unsafe, Lessee agrees to surrender possession of the units on demand. The Owner may treat possession of the units as final settlement under this lease, retaining all rental payments theretofor made, or at its option, the Owner may sell the units and make final settlement according to the terms of Section 9. It is provided however, that the expenses of repossession and sale, including reasonable attorneys' fees, shall be added to the obligations of Lessee hereunder for purpose of final settlement.

### 11. CONSTRUCTION

This agreement is, and is intended to be, a lease, and nothing herein shall be construed as conveying to Lessee any right, title or interest in the units or their proceeds except as Lessee.

### 12. LIABILITY

Lessee assumes all risk and liability for and shall hold the Lessor and its assigns harmless from all claims, liabilities or expenses for injuries or death to persons or loss or damage to property allegedly caused by any unit or arising out of the use, possession or transportation thereof.

### 13. SERVICE AND USE

Lessee agrees to care for the units in a careful and prudent manner and to make at his expense any and all repairs which may be necessary to keep the units in as good condition as they are now, reasonable use and wear thereof, excepted. Lessee shall

comply with and conform to all laws and regulations relating to ownership, possession, use and maintenance of the units, and with all conditions of policies of insurance on the units. Lessee shall pay when due all taxes, license fees and charges of any kind that may be assessed or charged against the units or the use thereof. Lessee will not without written consent of the Owner install any accessory or device on any unit if such installation will impair the originally intended function or use of the unit. All parts or devices affixed to any unit shall automatically become the property of the Owner (except such as may be removed without in any way affecting the originally intended function or use of the unit).

| A. H. Heine Imp. Co. | Floren Klopfenstein |
|---|---|
| LESSOR | LESSEE |
| A. H. Heine Imp. Co. | Floren Klopfenstein |
| BY | BY |

July 29, 1965

(DATE)