BEASON v BEASON (AFTER REMAND)

Docket No. 136783. Submitted April 13, 1993, at Detroit. Decided
March 21, 1994, at 9:05 A.M.

Kenneth P. Beason brought an action in the Monroe Circuit
Court against Mary L. Beason, seeking to terminate alimony
under the terms of the parties' divorce judgment on the ground
that the defendant was residing with an unrelated male, John
Robinson. The court, William F. LaVoy, J., granted the plain-
tiff's motion to terminate alimony. The Court of Appeals,
WEAVER and G. S. ALLEN, JJ. (GILLIS, P.J., concurring), reversed
in an unpublished opinion per curiam, decided March 29, 1988
(Docket No. 98716), concluding that the evidence was insuffi-
cient to show that the defendant resided with Robinson. The
Supreme Court reversed the Court of Appeals decision, finding
that it was based on an incorrect standard of review. The Court
noted that "it appears the trial court's findings of fact may
have been based on an erroneous view of the law," and re-
manded the case to the trial court "for consideration of the
meaning of the term 'reside' in the parties' divorce judgment."
435 Mich 791 (1990). On remand, the trial court concluded that
"reside" was an ambiguous term undefined by Michigan law,
and resorted to a benefit test and the definition set forth in
Black's Law Dictionary (5th ed). Applying essentially undis-
puted facts, the court again concluded that the defendant was
residing with Robinson and ruled that the plaintiff was no
longer obligated to pay alimony. The defendant appealed.

After remand, the Court of Appeals *held:*

1. The term "reside" is unambiguous. The definition of "resi-
dence" is well settled in this state.

2. "Residence" means the place where one resides; an abode;
a dwelling or habitation; especially, a settled or permanent
home or domicile. Residence is made up of fact and intention.
There must be the fact of abode, and the intention of remain-
ing.

3. The trial court erred in concluding that Robinson resided
with the defendant. There was no evidence that either the
defendant or Robinson considered the defendant's home to be
Robinson's settled or permanent home. The evidence indicates

a transient relationship in which Robinson was at most a frequent guest at the defendant's home. There was no evidence that Robinson intended to become a permanent occupant of the defendant's household. Absent such an intent, Robinson falls outside the definition of "resident" consistently adopted by the Court of Appeals and the Supreme Court.

4. Because the trial court failed to apply the facts of this case to the well-settled definition of the term "reside," the order terminating the plaintiff's alimony obligation must be reversed.

Reversed.

TAYLOR, J., dissenting, stated that the Supreme Court's instruction to the trial court to consider "the meaning of the term 'reside' in the parties' divorce judgment" meant that its meaning in the judgment could be different than its meaning in other judgments and, therefore, it is not a legal term of art, like "residence." The trial court correctly found the term "reside" to be ambiguous, and should have applied contract analysis principles to determine what the parties meant the term to mean. The majority erroneously relies on the definition of "resident" in deciding that the word "reside" is unambiguous. The matter should be remanded to the trial court for a determination of what the parties agreed, and then resolution of the question concerning the alimony clause as directed by the Supreme Court.

*E. J. McCormick, Jr.,* for Kenneth Beason.

*Ready, Sullivan & Ready* (by *Michael L. Heller*), for Mary Beason.

### AFTER REMAND

Before: WAHLS, P.J., and MACKENZIE and TAYLOR, JJ.

MACKENZIE, J. Defendant appeals as of right from an order terminating plaintiff's obligation to pay alimony. We reverse.

The parties were divorced in 1985. The divorce judgment provided that plaintiff's obligation to pay defendant $320 a month in alimony would terminate "when [defendant] should reside with an

unrelated adult male person." One year later, plaintiff filed a motion for the termination of alimony, alleging that defendant was residing with an unrelated male, John Robinson. The trial court granted the motion following an evidentiary hearing. This Court reversed, concluding that the evidence was insufficient to show that defendant resided with Robinson. *Beason v Beason,* unpublished opinion per curiam of the Court of Appeals, decided March 29, 1988 (Docket No. 98716).

The Supreme Court subsequently reversed this Court's decision because it was based on an incorrect standard of appellate review. *Beason v Beason,* 435 Mich 791, 805; 460 NW2d 207 (1990). The Court further noted that "it appears the trial court's findings of fact may have been based on an erroneous view of the law," *id.,* and remanded the case to the trial court "for consideration of the meaning of the term 'reside' in the parties' divorce judgment." *Id.* at 806.

On remand, the trial court concluded that "reside" was an ambiguous term undefined by Michigan law, and resorted to a benefit test and the definition set forth in Black's Law Dictionary (5th ed). Applying essentially undisputed facts, the court again concluded that defendant was residing with Robinson, and therefore again ruled that plaintiff was no longer obligated to pay alimony. It is this determination that defendant now appeals.

Unlike the trial court, we do not believe that the term "reside" is ambiguous. On the contrary, the definition of "residence" is well settled in this state. In *Wright v Genesee Circuit Judge,* 117 Mich 244, 245; 75 NW 465 (1898), our Supreme Court defined the ordinary meaning of "residence" as follows:

Residence means the place where one resides; an

abode; a dwelling or habitation; especially, a settled or permanent home or domicile. Residence is made up of fact and intention. There must be the fact of abode, and the intention of remaining.

See also *Banfield v Banfield,* 318 Mich 38, 43; 27 NW2d 336 (1947); *Leader v Leader,* 73 Mich App 276, 280-281; 251 NW2d 288 (1977); *Bingham v American Screw Products Co,* 398 Mich 546, 564; 248 NW2d 537 (1976); *In re Scheyer's Estate,* 336 Mich 645; 59 NW2d 33 (1953); *Reaume & Silloway, Inc v Tetzlaff,* 315 Mich 95, 99; 23 NW2d 219 (1946); *Hartzler v Radeka,* 265 Mich 451; 251 NW 554 (1933).

Applying this definition to the undisputed facts, it is apparent that the trial court erred in concluding that John Robinson resided with defendant. There was no evidence that either defendant or Robinson considered defendant's home to be Robinson's settled or permanent home. Rather, the evidence established a transient relationship in which Robinson was at most a frequent guest at defendant's home. Further, there was no evidence that Robinson intended to become a permanent occupant of defendant's household. Absent such an intent, Robinson falls outside the definition of "resident" consistently adopted by this Court and our Supreme Court.

Where a trial court's finding is derived from an erroneous application of law to facts, the appellate court is not limited to review for clear error. *Beason, supra,* 435 Mich 804-805. Nor is an appellate court so limited where the trial court's factual findings may have been influenced by an incorrect view of the law. *Id.* at 805. Because the trial court failed to apply the facts of this case to the well-settled definition of the term "reside," we reverse the order terminating plaintiff's alimony obligation.

Reversed.

WAHLS, P.J., concurred.

TAYLOR, J. *(dissenting).* I respectfully dissent from the opinion of the majority in this matter.

It is important to recall that in this case the divorce judgment provided that plaintiff's obligation to pay defendant $320 a month in alimony would terminate "when [defendant] should reside with an unrelated adult male person." Plaintiff contended that the evidence showed that his ex-wife was residing with an unrelated adult male; defendant argued that the evidence did not show that she resided with her male companion.

The trial court initially terminated the plaintiff's alimony obligation in April 1986. This Court reversed,[1] but our Supreme Court reversed the decision of this Court and remanded the case to the trial court for clarification, stating:

> The meaning of the term "reside" in the divorce judgment may be a factual or legal question. However, the record before us does not reveal how the trial court arrived at its definition of the term. The trial court resorted to several extrinsic sources to define "reside" without first determining that the term was ambiguous. Until the trial court has been afforded an opportunity to clarify the basis of its earlier findings regarding the meaning of the term "reside," we cannot ascertain whether the proper legal rule has been misapplied in arriving at the findings of fact made below.
>
> Thus, we remand this case to the trial court for consideration of the meaning of the term "reside" in the parties' divorce judgment, and direct the trial court to state the legal and factual basis for its definition of the term, specifying which findings

---

[1] *Beason v Beason,* unpublished opinion per curiam of the Court of Appeals, decided March 29, 1988 (Docket No. 98716).

are of fact and which of law. *Beason v Beason,* 435
Mich 791, 806; 460 NW2d 207 (1990).

As I understand this order of the Supreme
Court, it must be read to indicate that the Su-
preme Court did not think the meaning of the
term "reside" was clear on its face. In fact, had
the Court thought so, undoubtedly, even as the
majority has done here, the Court would have said
so. Anything less would be an invitation to ineffi-
cient use of judicial resources, which our Supreme
Court, aware of the burdens under which our trial
courts labor, would not have done. When the
Court instructed the trial court to consider "the
meaning of the term 'reside' in the parties' divorce
judgment," must this not have meant that its
meaning in the judgment could be different than
its meaning in other judgments? In short, isn't the
Court saying that it's not a legal term of art such
as "domicile," "cohabitation," or, indeed, "resi-
dence"? I believe that to not conclude that this is
what the Court was doing is to give a skewed
reading to its instruction.

In any event, the trial court clarified its earlier
findings by stating that it found "as a matter of
law that the term 'residence' as used in this judg-
ment of divorce and as we deal with it in this file,
is an ambiguous term." The trial court went on to
say that because "reside" was an ambiguous term
and had not been defined by Michigan law, it
would take a definition from "a number of
sources" including the judgment, a "benefit test
(economic assistance)," Black's Law Dictionary,
and federal case law.

Notable is the trial court's express decision not
to reopen proofs. Having culled a "legal" definition
of the word "reside" from the various sources, the
trial court applied this definition to the behavior

of the two people in question, found as fact that an unrelated male had "resided with" defendant, and ruled that plaintiff was no longer obligated to pay defendant alimony. I believe the trial court was almost correct in its approach to the remand (closer by far than the majority here) but misapprehended that the Supreme Court was telegraphing by its order that what was being dealt with here was, in essence, a contract between the parties. Accordingly, contract analysis was appropriate.

The alimony provision in dispute was part of a consent decree. The parties negotiated and agreed upon its terms, including the alimony provision; thus the decree should have been treated like a contract for interpretive purposes. Accordingly, the rules pertaining to the consideration of contracts apply. *Beason, supra,* 435 Mich 798-799, n 3, and cases cited therein.

With regard to the threshold question whether the word "reside" as used in the judgment is ambiguous, I believe the trial court was correct in finding that it was. The majority, of course, feels that the trial court was wrong. The problem with the majority's position is that in deciding that the word "reside" is unambiguous, they have relied upon the definition of an altogether different word, "resident," in reaching that conclusion. To my mind, the error they make is analogous to saying the phrase "live with" is synonymous with the term "domicile." They are not. "Domicile," even as "resident," is a term of art with a well-developed legal meaning. "Live with" and "reside" do not have such a legal history.

Because "resident" is a legal term of art, it is not surprising that the majority was able to find many cases giving definitions of it. The same

would have been true had they tried to find the definition of the word "domicile" or "cohabitation," for example. Such ease of definition isn't the case with lay words, however, of which "reside" is clearly one. There is only one court of which I am aware where this language has been construed in a postdivorce situation. *Mulhern v Mulhern,* 446 So 2d 1124, 1127 (Fla App, 1984). What this all means is that there is no settled construction to be engrafted onto this consent decree. That being the case, the term employed in this context would not be held to have the rebuttable legal meaning the case law gives it. *Nationwide Mutual Fire Ins Co v Detroit Edison Co,* 95 Mich App 62; 289 NW2d 879 (1980).

Having properly determined that "reside" as used in the judgment was ambiguous, the trial court's next effort should have been to determine what the *parties* intended "reside" to mean when they entered into the agreement. Fundamentally, the trial court's task is not to remake the parties' agreement or to find a meaning not intended, but to determine, if possible, the true intent of the parties. *Klever v Klever,* 333 Mich 179; 52 NW2d 653 (1952). The testimony of the parties and perhaps of others involved in the negotiations, such as their attorneys, could contribute to this fact finding. 3 Corbin, Contracts, § 538.

Similarly, reference to extrinsic sources such as Black's Law Dictionary, case law, or principles of contract construction could be made as long as those sources had been utilized by the parties themselves in formulating the phraseology of the consent decree. Or, to the degree that local usages in the bar of the term "reside" give the term a fixed meaning in the community, which was conveyed to the negotiating parties, that information could be helpful to the court and might be disposi-

tive. It would be well to recall the abjuration of Professor Corbin in his treatise:

> Ordinary English words can be deprived of their ordinary meanings and supplied with others—even with meanings that are the exact opposite of their ordinary ones. White can be made to mean black, five can be made to mean ten, 500 feet can be made to mean 100 inches, and Bunker Hill Monument can be made to signify Old South Church. [3 Corbin, Contracts, § 544, p 155.]

If the evidence adduced caused the trial court to conclude that the parties agreed with regard to the meaning of the word "reside," then that is the meaning that should have been applied to the already existing record concerning the conduct of defendant and Mr. Robinson. *Bonfiglio v Pring,* 202 Mich App 61; 507 NW2d 759 (1993). On the other hand, if the trial court concluded that the parties had no meeting of the minds regarding the meaning of the term "reside," the court should then have resorted to the other general principles that govern judicial interpretation and enforcement of contracts.

For example, if this provision was worded and inserted by or at the behest of one party only, then any ambiguity is construed against the party who drafted this clause. *Petovello v Murray,* 139 Mich App 639; 362 NW2d 857 (1984); *Higbie v Chase,* 306 Mich 577; 11 NW2d 248 (1943). Also to be taken into account is the subject matter, the object, and the purpose of the questioned terminology. *John Deere Co v Wonderland Realty Corp,* 38 Mich App 88; 195 NW2d 871 (1972).

Finally, because the document was drawn in English, the court could resort to standard dictionaries to determine the meaning of the word or words at issue. This would then be the meaning

intended by the parties because, having no unique definition of the term, the common meaning to an English speaker in our country would be understood by default, always bearing the context in mind. *Staebler-Kempf Oil Co v Mac's Auto Mart, Inc,* 329 Mich 351; 45 NW2d 316 (1951).

Taking any other approach to determine what this language means snatches from the parties their freedom to reach binding agreements and, ultimately, takes away the certainty that agreements cannot be altered unilaterally. *Bers v Bers,* 161 Mich App 457, 464-465; 411 NW2d 732 (1987). Therefore, I would remand this matter for the trial court to determine what the parties agreed, and then to resolve the question concerning the alimony clause as directed by the Supreme Court.