*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARMLAND CAPITAL SOLUTIONS, LLC,

Plaintiff-Appellant,

v

MICHIGAN VALLEY IRRIGATION COMPANY,

Defendant-Appellee.

FOR PUBLICATION
January 14, 2021
9:05 a.m.

No. 352689
Van Buren Circuit Court
LC No. 19-069209-CZ

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

BOONSTRA, J.

Plaintiff appeals by right the trial court's order denying its motion for summary disposition and granting defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The largely undisputed facts of this case concern the priority of two creditors with regard to their respective security interests in specific farm equipment purchased in 2016 by Boersen Farms, Inc (Boersen). Plaintiff's predecessor in interest, First Farmers Bank and Trust (First Farmers), recorded a Uniform Commercial Code (UCC) financing statement in 2014 as a secured creditor of Boersen, claiming as secured collateral the following:

> All present and future right, title and interest in and to any and all personal property of the Debtor, whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation, the following categories of property as defined in the Revised Article 9 of the Uniform Commercial Code (the "UCC"): goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit accounts (whether or not the letter-of-credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), all supporting obligations and all proceeds,

-1-

products, additions, accessions, substitutions and replacements of the foregoing property.

Any term used herein which is defined in the UCC shall have the meaning set forth in the UCC, and if the meaning is modified by an amendment, modification or revision to the UCC, such modified definition will apply automatically as of the date of such amendment, modification or revision to the UCC.

This financing statement covers, and is intended to cover, all personal property of the Debtor.[1]

In 2016, Boersen ordered seven irrigation "pivots" from defendant. Pivots are large pieces of agricultural farm equipment. According to bills of lading provided to the trial court, the pivots were shipped, unassembled, to Boersen during the month of April 2016. John McGee (McGee), who was the president of defendant in 2016, stated in an affidavit that it was defendant's goal to construct and install pivots within two to four weeks of delivery. McGee's affidavit further stated that defendant "originally invoiced Boerson [sic] for the pivots on April 22, 2016." Defendant attached invoices to its motion for summary disposition that bore an "invoice date" of April 22, 2016.[2]

The parties agree that Boersen did not pay for the pivots after receiving the initial invoices. On June 2, 2016, defendant issued Boersen another set of invoices for the pivots in the total amount of $465,599.00. That same day, Boersen entered into an "equipment lease agreement" for the pivots with a lender, Bank of the West. The equipment lease agreement provided for annual rental payments of $89,125.76. It also contained a provision stating in part:

> 18. OWNERSHIP, PERSONAL PROPERTY. This is a lease, and Lessee's rights to the Equipment are those solely of a lessee notwithstanding any trade-in or down payment Lessee may make. Lessee will move the Equipment or Equipment Location at Lessor's request to [illegible][3] Lessor's ownership of the Equipment. . . .

Accompanying the equipment lease agreement was a Schedule A form that described the pivots and provided the amount and due dates of the payments, and also contained the statement "6/21 Effective date for option to purchase." Additionally, Boersen executed several addendums to the equipment lease agreement. One such addendum was a document entitled "Certificate of

---

[1] First Farmers subsequently released certain specific property from its security interest through additional UCC filings.

[2] Those invoices also reflected a date of "5/22/16." Because of the poor quality of the invoices, it is unclear what this date refers to, but based on other, better-quality invoices in the record, we infer that the "5/22/16" date reflects a "Due Date."

[3] All of the copies of the equipment lease agreement found in the lower court record and provided by the parties on appeal are of extremely poor quality.

Acceptance," which noted that the leased equipment was described in the attached Schedule A, and also stated in relevant part:

> LESSEE ACKNOWLEDGES RECEIPT OF ALL OF THE EQUIPMENT AND ITS ACCEPTANCE FOR PURPOSES THE LEASE.
>
> LESSEE ACKNOWLEDGES THAT THE RENT FOR THE EQUIPMENT WILL BE BASED ON THE EQUIPMENT'S ACTUAL COST, EXCEPT AS MAY BE PROVIDED IN AN ADDENDUM TO THE LEASE.
>
> LESSEE UNDERSTANDS THAT (i) BASED HEREON LESSOR WILL PAY FOR THE EQUIPMENT NOT PREVIOUSLY FUNDED . . . .

Another addendum was entitled "Lease Expiration Purchase Agreement" and stated in relevant part that "Lessor and Lessee agree that at the expiration of the Lease, Lessee will purchase, AS-IS-WHERE-IS, Lessor's interest in all, but not less than all, of the Equipment then leased or otherwise included under the Lease for the Residual Value of the cost to Lessor of such Equipment."

On June 8, 2016, Bank of the West filed a UCC financing statement listing Boersen as a secured debtor and listing as collateral all equipment covered by the equipment lease agreement. On June 9, 2016, Bank of the West paid defendant the entire purchase price for the pivots.

The parties agree that at some point Boersen defaulted on its payments under the equipment lease agreement and that in January 2019, Bank of the West foreclosed on property in which it claimed a security interest, including the pivots. Bank of the West held a private foreclosure sale at which defendant purchased the pivots.

Plaintiff, now the holder of First Farmer's security interest in Boersen's personal property, filed suit in February 2019, arguing that it possessed a superior interest in the pivots by virtue of various UCC financing statements; it asserted claims of common law and statutory conversion, claim and delivery, and disgorgement. After discovery, both parties moved for summary disposition, each arguing that a different security interest had priority. Defendant argued that Bank of the West had properly recorded a purchase-money security interest (PMSI) in the pivots that took priority over plaintiff's interest in Boersen's personal property generally. Plaintiff argued that Bank of the West had failed to perfect its PMSI within 20 days of when Boersen took "possession" of the pivots, which it alleged was when the pivots were delivered or when the invoices were issued, and that Bank of the West's interest was therefore second in priority to plaintiff's earlier-recorded interest. The trial court held a hearing on the competing motions, after which it granted defendant's motion and denied plaintiff's motion, holding that Bank of the West had timely recorded its PMSI. This appeal followed.

## II. STANDARD OF REVIEW

We de novo review a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is

entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010).

We review de novo as questions of law the interpretation and application of the Uniform Commercial Code. See *Heritage Resources, Inc v Caterpillar Fin Servs Corp*, 284 Mich App 617, 632; 774 NW2d 332 (2009).

## III. ANALYSIS

Plaintiff argues that the trial court erred by holding that Bank of the West had timely perfected its PMSI in the pivots (and that the repossession and sale to defendant was therefore valid). We disagree.

As a threshold matter, although the agreement between Boersen and Bank of the West was termed an "equipment lease agreement" and purported to "rent" the pivots to Boersen with the bank retaining ownership, the parties seem to agree that the agreement was a security agreement, not a true lease. That is also how the trial court analyzed the issue. An agreement entitled an "equipment lease" may, by its terms, in fact constitute a security agreement. See MCL 440.1203; see also *John Deere Co v Wonderland Realty Corp*, 38 Mich App 88, 91; 195 NW2d 871 (1972). Although the copies of the equipment lease agreement available to this Court are of extremely poor quality and are largely illegible, the equipment lease agreement does appear to bind Boersen to become the owner of the pivots and is not terminable by Boersen; such transactions generally create a security interest. MCL 400.1203(b). In any event, because the trial court and the parties proceeded as though Bank of the West had financed Boersen's purchase of the pivots, we will analyze the issue in that manner as well.

As a further preliminary matter, we note that plaintiff only refers to its 2014 UCC financing statement in a single footnote of its brief on appeal, and it does so there in conjunction with a reference to a 2014 Security Agreement. Yet, plaintiff does not explain the linkage, if any, between the two documents, and we note that the debtor named in the 2014 Security Agreement appears to be a different entity (i.e., Boersen Farms Properties, LLC) than that named in the UCC financing statement (i.e., Boersen Farms, Inc.). Still further, plaintiff premises its entire argument on appeal not upon the security interest as identified in the UCC financing statement, but instead on that as identified in the Security Agreement, characterizing the Security Agreement as containing a "standard 'after-acquired' clause," which is what plaintiff contends gives it a security interest in the pivots that are at issue in this case. Yet, plaintiff's quotation from that clause fails to reflect that the clause on its face appears to apply only to "fixtures" (which pivots appear not to be) and specific property (i.e., other pivots) that is not at issue in this case. Despite all of this, we conclude that we need not navigate these issues because, even construing plaintiff's argument as relating to its 2014 UCC financing statement (which we quote above), and even assuming that the 2014 UCC

financing statement gives plaintiff a security interest in the pivots at issue in this case, plaintiff's claim still fails for the reasons that we will explain in this opinion.

Generally, the first secured creditor to file a financing statement or otherwise perfect a security interest in the collateral of a debtor has priority over other secured creditors who later file or perfect a security interest. MCL 440.9322(1)(a). However, an exception exists with regard to "purchase-money collateral," which is comprised of "goods or software that secures a purchase-money obligation incurred with respect to the collateral." MCL 440.9103(1)(a). A "purchase-money obligation" is an obligation incurred by a debtor, the value of which is used to pay for all or part of the collateral. See MCL 440.9103(1)(b). In other words, it is what we commonly refer to as the "financing" for a purchase. "[A] perfected purchase-money security interest in goods . . . has priority over a conflicting security interest in the same goods . . . if the purchase-money security interest is perfected when the debtor receives possession of the collateral or within 20 days thereafter." MCL 440.9324(1). As applied to this case, this means that if Bank of the West perfected its PMSI by filing its UCC financing statement covering the pivots no later than 20 days after Boersen "received possession of the collateral," then its PMSI had priority over plaintiff's earlier-recorded security interest. The parties' dispute centers on what it means in this instance for the debtor (Boersen) to have received possession of the collateral (the pivots).

Plaintiff argues that Boersen took possession of the pivots no later than May 13, 2016.[4] It is not entirely clear how plaintiff arrived at the May 13 date, which plaintiff identifies definitively as the date by which the pivots were installed.[5] Plaintiff cites to the deposition testimony of two persons who presumably were involved in the delivery of the pivots, but the cited testimony does not actually support such a conclusion; at best, the testimony merely shows that, generally, pivots are installed on a customer's property within a few weeks of delivery. Plaintiff also provides no legal support for its interpretation of MCL 440.9324(1)'s "possession" requirement as related to the date that installation of the pivots was complete;[6] similarly, plaintiff does not support its contention that the date of the first set of invoices, i.e., April 22, 2016, is a relevant date for purposes of determining when the 20-day clock begins to run.

On the other hand, defendant argues, and the trial court found, that the 20-day perfection period does not begin to run until the goods in question actually become "collateral" subject to a security interest. This comports with language found in the official comments to MCL 440.9324, which, although they do not have the force of law, "are useful aids to interpretation and construction of the UCC" and were "intended to promote uniformity in the interpretation of the UCC." *Prime Fin Serv LLC v Vinton*, 279 Mich App 245, 260 n 6; 761 NW2d 694 (2008).

---

[4] If the 20-day perfection period began to run on May 13, 2016, it would have expired on June 2, 2016, before Bank of the West filed its June 8, 2016 UCC financing statement.

[5] In fact, plaintiff elsewhere asserts that "[t]he goods (i.e., pivots) were delivered to and installed by April 22, 2016."

[6] We note that plaintiff did not argue this in the trial court, and instead asserted there that "possession" related to delivery of the pivots.

Comment 3 to MCL 440.9324 discusses an example in which a debtor "acquires possession of goods under a transaction that is not governed by this Article[7] and then later agrees to buy the goods on secured credit." See MCL 440.9324, UCC comment 3. Comment 3 makes clear that in such a case there is no need to file a financing statement to protect a secured creditor's interest until the creditor's secured interest comes into being. According to comment 3, "the 20-day period in subsection (a) does not commence until the goods become 'collateral' . . ., i.e., until they are subject to a security interest." *Id.* A number of jurisdictions have followed this rationale, which has been called the "obligation" standard. See, e.g., *Citizens Bank of Americus v Fed Fin Serv, Inc*, 235 Ga App 482; 509 SE2d 339 (1998); *Brodie Hotel Supply Inc v United States*, 431 F2d 1316 (CA 9, 1970); *In re Prior Bros Inc*, 29 Wash App 905; 632 P2d 522(1981).[8]

Plaintiff urges this Court to instead view the transaction between Boersen and defendant as a sale of goods in which title passed upon delivery. Plaintiff does not provide any citation of authority in support of its position, other a bare citation to UCC provisions. But this view of the transaction would arguably be consistent with the approach taken in *North Platte State Bank v Production Credit Assoc of North Platte*, 189 Neb 44; 200 NW2d 1 (1972), in which the court held that the plaintiff bank had not even acquired a PMSI in the goods at issue (in that case, 79 head of cattle), because the purchaser had obtained title and possession of them under an oral sales agreement and was already indebted to the seller; the bank's funds therefore did not enable the purchaser to "acquire rights in or the use of" the cattle. *North Platte State Bank*, 189 Neb at 51.[9]

However, we believe the "obligation" standard is more faithful to the language of MCL 440.9324 and Comment 3. *Heritage Resources, Inc*, 284 Mich App at 632; *Prime Fin Serv LLC*, 279 Mich App at 260 n 6. MCL 440.9324(1) conditions the commencement of the 20-day perfection period on when the "debtor" receives possession of the "collateral." Article 9 defines a "debtor" as a "person having an interest, other than a security interest or other lien, *in the collateral*, whether or not the person is an obligor." See MCL 440.9102(bb)(*i*) (emphasis added).

---

[7] Since Comment 3 is a comment to MCL 440.9324, which is part of Article 9 of Michigan's codification of the UCC, Comment 3's reference to "this Article" is a reference to Article 9 of the Michigan UCC, which governs "secured transactions."

[8] Decisions of other state courts and lower federal courts are not binding on this Court, but may be persuasive; further, it may be especially appropriate to review the law of other jurisdictions when interpreting the UCC "[i]n light of the UCC's admonition that courts promote uniformity among the jurisdictions that have adopted" it. *Higgins v Lauritzen*, 209 Mich App 266, 271; 530 NW2d 171 (1995).

[9] Some jurisdictions, in contrast to those applying the "obligation" standard, have followed a "physical possession" standard. See *North Platte*; see also *In re Automated Bookbinding Serv, Inc*, 471 F2d 546 (CA 4 1972). But even that standard "requires more than bare possession on the part of the debtor; it requires possession plus title or a sales contract or a security agreement, depending on the specific facts of a given case." *Color Leasing 3, LP v FDIC*, 975 F Supp 177 (D. RI, 1997), citing *Equip Fin Group, Inc v Traverse Computer Brokers*, 973 F2d 345, 349 n 5 (CA 4 1992).

Until Boersen entered into the equipment lease with Bank of the West, the pivots were not "collateral." See MCL 440.9103(1)(a). We therefore interpret MCL 440.9324(1) as requiring the existence of "collateral" before there can be a "debtor" for purposes of that statutory section. Consequently, the 20-day period for the perfection of Bank of the West's PMSI did not begin to run until Boersen entered into the equipment lease agreement on June 2, 2016, and Bank of the West's June 8, 2016 filing of its UCC financing statement therefore served to timely perfect its PMSI in the pivots.

Moreover, to the extent that the initial transaction between Boersen and defendant was a sale of goods, sales of goods are governed by Article 2 of the UCC, MCL 440.2101 *et seq*., not by Article 9. Therefore, even if Boersen did acquire possession of the pivots on or before May 13, 2016,[10] as plaintiff contends, it would have done so "under a transaction that is not governed by" Article 9, and according to Comment 3, the 20-day perfection period still would not have commenced until the goods became collateral. MCL 440.9324, UCC comment 3. Since the goods did not become collateral until the signing of the equipment lease agreement on June 2, 2016, Bank of the West's June 8, 2016 perfection of its PMSI was effective.

For all of these reasons, we conclude that the trial court did not err by granting summary disposition in favor of defendant. *Moser*, 284 Mich App at 538.

Affirmed.

/s/ Mark T. Boonstra
/s/ James Robert Redford
/s/ Jane E. Markey

---

[10] We note that there was evidence in the record, in the form of testimony from defendant's employees, that defendant still considered itself to be the owner of the pivots until they were paid for, and that defendant would have retrieved the equipment if financing had not been obtained.