*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILMINGTON SAVINGS FUND SOCIETY,

      Plaintiff-Appellant,

UNPUBLISHED
December 22, 2022

v

No. 360342
Washtenaw Circuit Court
LC No. 21-000226-CK

RANDALL BROOKSHIRE,

      Defendant-Appellee.

Before: HOOD, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

Plaintiff, Wilmington Savings Fund Society (Wilmington), appeals as of right the order of the trial court granting summary disposition in favor of defendant, Randall Brookshire (Brookshire), and denying Wilmington's motion for summary disposition. We reverse the trial court's conclusion that the statute of limitations bars Wilmington's claims, and remand for the court to proceed consistent with this opinion, including determining whether laches bars them instead.

## I. BACKGROUND

On March 22, 2006, Brookshire and his wife, Peggy Brookshire (Peggy), purchased a home located at 216 Maple in Ypsilanti, Washtenaw County, Michigan. The purchase price of the property was $201,000. The purchase was secured by two mortgages. Both mortgages had the same lender, Investaid Corporation (Investaid), and the same mortgagee, Mortgage Electronic Registration Systems, Inc. (MERS). Brookshire also executed two notes: the first, related to the senior mortgage, was for $160,800; the second, related to the junior mortgage, was for $40,200. Although Brookshire and Peggy both signed each mortgage, only Brookshire signed the note at

issue.[1]  After a series of transfers, the note relating to the junior mortgage eventually was assigned to Wilmington.

The senior mortgage was recorded in Liber 4550, Page 100.  The junior mortgage was recorded in Liber 4550, Page 101.  Under the second note, Brookshire agreed to make 179 monthly payments of $465.20 beginning May 1, 2006, through maturity on April 1, 2021.  The note also provided that, assuming that Brookshire made all of the monthly payments, "a final payment of the then outstanding principal balance plus all earned interest remaining unpaid (Balloon Payment amount) estimated to be in the amount of $36,025.55 shall become due and payable on April 1, 2021 (the Maturity Date)."

In 2007, the Brookshires defaulted.  A notice of foreclosure by advertisement was published in the Washtenaw County Legal News on February 14, 2008, February 21, 2008, February 28, 2008, and March 6, 2008.  The notice indicated that the Brookshires were in default with respect to the mortgage recorded in Liber 4550 on Page 100, i.e., the senior mortgage.  The notice did not mention the junior mortgage.  The notice also indicated that, as of February 14, 2008, $182,415.89, including interest at 11.05% per annum, was due under the senior mortgage.  On March 13, 2008, the property was sold at a sheriff's sale for $102,000.  Brookshire had until September 13, 2008, to redeem the property but he failed to do so.  On that date, therefore, the property transfer was complete.

On November 19, 2020, Wilmington sued Brookshire in Livingston Circuit Court, alleging that he owed Wilmington for past due payments and principal balance due as of November 1, 2020.  Wilmington alleged that Brookshire executed a note promising to repay a loan made to him by Investaid.  It alleged that the loan was an installment contract that required a balloon payment at the date of maturity.  Additionally, Wilmington alleged that Brookshire defaulted on the terms of the note by failing to make installment payments, as agreed, for the preceding six years.  Wilmington alleged that, under the terms of the note, and as of the filing of the complaint, "there was due and owing to [it], 72 months of payments within the statute of limitations."  It asserted that it had "not previously accelerated any amounts due on the Note."  Wilmington, therefore, sought "[j]udgment on the past due 72 installments and the remaining installments due, which [were] within the statute of limitations through the end of the maturity date of the note."

After it entered a default against Brookshire, the Livingston Circuit Court subsequently entered a stipulated order setting aside the default and changing venue to Washtenaw Circuit Court.  Brookshire answered Wilmington's complaint and asserted several affirmative defenses, including that Wilmington's claims were barred by the statute of limitations and the doctrine of laches.

The parties then each filed motions for summary disposition.  Brookshire elaborated on his claims that Wilmington's claims were barred by the statute of limitations and laches.  He also asserted Wilmington did not have a right to collect on the note because it could not demonstrate it had a contractual relationship with him.  Wilmington's motion responded to Brookshire's statute-of-limitations argument, asserting that because the loan at issue was an installment loan, its claims

---

[1] Only the second note is at issue in this case.  The note related to the senior mortgage is not part of the record.

accrued as each installment came due. It also argued that its possession of the "assignment in blank attached to the Note" was prima facie evidence of its title or right to sue upon the note.

Wilmington also responded to Brookshire's dispositive motion. It argued that Brookshire was mistaken regarding cross-collateralization, and asserted that Brookshire's laches argument failed because he could not establish a "change in condition" or the prejudice he suffered. Brookshire reiterated there was no contract between himself and Wilmington, and asserted that the note and mortgages were accelerated and merged, so "a default of one [was] a default of all." His response also repeated his earlier arguments regarding the statute of limitations and laches.[2]

After a hearing on the parties' dispositive motions, the trial court concluded that Brookshire was "entitled to summary disposition based on the statute of limitations." The court noted that payments were not made for 12 years, and disagreed with Wilmington's position that "each missed payment constitutes another . . . obligation that . . . continues the statute of limitations or tolls the . . . statute of limitations or however you wanna consider it." The court stated "that the statute of limitations continues, uh, to be preserved or isn't [sic] running while, uh, additional payments are not made." The trial court also found that Brookshire was "entitled to summary disposition on the acceleration and foreclosure." The court stated:

> [T]he, uh, situation described, uh, by—by the Plaintiff where the [junior] mortgage, uh, remains viable and the, uh, borrower remains obligated on a [junior] mortgage is different from this situation where the—uh, there was a merger of the—of the, uh, obligations under the two mortgages under a single lender. And, uh—and again, the—the situation described by the Plaintiff where—where a [junior] mortgage, uh, is not extinguished by a foreclosure, uh, would be where you have two lenders or you don't have a merger, uh, that is negotiated, uh, by the parties as part of the [junior] mortgage.

The trial court also indicated it would "not rule on the laches argument." It did state, however, that it thought the laches issue "might present . . . genuine issues of material fact." It explained, it did not need to reach that issue because of its "rulings on the statute of limitations and, uh, the acceleration and, uh, ex—extinguishment of the [junior] mortgage through the foreclosure."

At the conclusion of the hearing, Wilmington's trial counsel asked two questions to clarify the trial court's ruling. First, he asked whether the trial court was finding that the installment payment theory did not apply. The trial court stated: "Yes." Second, he asked whether the trial court was "also making a determination that a foreclosure of the [senior] mortgage then eliminates the debt on a [junior mortgage.]" The trial court stated: "In this circumstance. In this very specific circumstance, yes." After the hearing, the trial court entered an order granting Brookshire's motion for summary disposition and denying Wilmington's motion for summary disposition "for the

---

[2] Brookshire also replied in support of his motion for summary disposition. The arguments in his reply do not, for the most part, differ significantly from those in his initial motion and response. He did, however, provide additional reasons justifying application of laches.

reasons stated on the record[.]" Wilmington successfully moved for reconsideration. This appeal followed.

## II. ACCELERATION OF NOTE AND PERIOD OF LIMITATIONS

Wilmington first argues that the trial court in granting summary disposition to Brookshire based on its finding that the note was accelerated by the foreclosure of the senior mortgage. We agree.

## A. STANDARD OF REVIEW

Brookshire moved for summary disposition under MCR 2.116(C)(7) and (10), and the trial court granted summary disposition in Brookshire's favor based on the statute of limitations. We review de novo a trial court's decision on a motion for summary disposition. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015). "Subrule (C)(7) permits summary disposition when the claim is barred by an applicable statute of limitations." *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). In *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court stated that, under MCR 2.116(C)(7), we

> must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

The interpretation of a contract is a question of law that this Court also reviews de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

## B. LAW AND ANALYSIS

A mortgage is not a debt but, instead, is a lien on real property securing a debt. *Stock Bldg Supply, LLC*, 317 Mich App at 207; *First of America Bank-Oakland Macomb, NA v Brown*, 158 Mich App 76, 81; 404 NW2d 706 (1987).[3] "The foreclosure of a senior mortgage extinguishes the lien of a junior mortgagee where the junior mortgagee did not redeem at the foreclosure sale." *Advanta Nat'l Bank v McClarty*, 257 Mich App 113, 125; 667 NW2d 880 (2003). The right to enforce a mortgage is extinguished after a foreclosure and at the end of the redemption period. *Id.*; *Wilmington Savings Fund Society, FSB v Clare*, 323 Mich App 678, 686; 919 NW2d 420 (2018). But just because the mortgage is extinguished, does not mean the underlying debt is extinguished; instead, the debt and accrual of interest continues. *Brown*, 158 Mich App at 81. If the foreclosed

---

[3] Although *Brown* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2).

property is purchased for less than what is owed, the mortgagee may proceed against the mortgagor for the deficiency. *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 522; 892 NW2d 467 (2016) (citation omitted). "The basis for such deficiency lawsuits is not the mortgage, . . . but the note[.]" *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership*, 295 Mich App 99, 109; 812 NW2d 799 (2011), remanded on other grounds 493 Mich 859 (2012). The note is just no longer secured with real property as collateral. *Brown*, 158 Mich App at 81.

Here, the trial court indicated that this case involved a situation where "there was a merger of the . . . obligations under the two mortgages under a single lender." When asked, the trial court clarified that in granting summary disposition, the trial court concluded that foreclosure of the senior mortgage eliminated the debt related to the junior. This conclusion was incorrect. The foreclosure of the senior mortgage extinguished the junior mortgage, see *Advanta Nat'l Bank*, 257 Mich App at 125, but the debt associated with the junior mortgage, and accrual of interest on that debt, continued, see *Brown*, 158 Mich App at 81. It simply continued without collateral. The trial court's findings to the contrary were, therefore, erroneous and Wilmington still had a claim under the note.

Wilmington also argues that the trial court erroneously found that the loan at issue was not an installment loan and, as a result, erroneously found that Wilmington's claims were barred by the statute of limitations. We agree.

An installment loan is a contract requiring payments in separate increments and to be accepted separately. See *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 532 n 5; 676 NW2d 616 (2004), quoting *Black's Law Dictionary* (7th ed) (defining an "installment contract" as " '[a] contract requiring or authorizing the delivery of goods in separate lots, or payments in separate increments, to be separately accepted.' "). Under MCL 600.5836, a claim on an installment contract accrues after each installment becomes due unless the contract contains an acceleration clause that is exercised. *Sparta State Bank v Covell*, 197 Mich App 584, 587-588; 495 NW2d 817 (1992). If a party exercises an acceleration clause, however, the entire unpaid balance under the contract is due, and the statute of limitations no longer runs separately after each installment becomes due. *Id*. The limitations period for a breach of contract claim is six years from the time the claim first accrues. See MCL 600.5807(9).

The note at issue was an installment loan. The note required payment of monthly installments of $465.20 beginning May 1, 2006, through maturity on April 1, 2021, and a final installment—the balloon payment—on the maturity date. The note also contained an acceleration clause though the note did not specifically identify it as such.[4] The note provided that if Brookshire did not pay the full amount of each monthly payment on time, the "Note Holder" could send him a written notice that failure to pay the overdue amount by a certain date would result in Brookshire being in default. If Brookshire failed to pay the overdue amount by the date stated in the notice,

---

[4] Courts are not bound by the labels parties may give to their documents; instead, we determine the nature of a particular instrument by examining its substance and what the document actually does. *Hartford v Holmes*, 3 Mich 460, 463 (1855); *In re Traub Estate*, 354 Mich 263, 278-279; 92 NW2d 480 (1958); *John Deere Co v Wonderland Realty Corp*, 38 Mich App 88, 91; 195 NW2d 871 (1972)

he would be in default, and if he was in default, under the note, "the Note Holder may require [him] to pay immediately the full amount of principal which has not been paid and all the interest that [he] owe[s] on that amount." The note also states that "[e]ven if, at a time when [Brookshire is] in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if [he is] in default at a later time."

Wilmington has repeatedly stated that it never exercised its option to accelerate the payments due under the note. In its response to Brookshire's motion for summary disposition, however, Wilmington stated: "Plaintiff has not previously accelerated the balance due, but as of the filing of the complaint the remaining balance has been accelerated." It sought "[j]udgment on the installment payments which are past due for 6 years prior to the filing of the complaint, the remaining amount due, at maturity plus interest." Brookshire contends, however, that the foreclosure of the senior mortgage operated to accelerate the note because the mortgages and notes were "cross-collateralized." Both mortgages contained a "Family Rider" that included a "Cross-Default Provision." That provision states: "Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument." Thus, Brookshire appears to confuse cross-collateralization provisions with cross-default provisions. Under the cross-default provision, Wilmington *could* have accelerated the notes once the Brookshires defaulted, but there is no indication that it did (at least until the time of filing its complaint). Accordingly, the installment payments that became past due within the last six years before the filing of the complaint are not barred by the statute of limitations.

## III. LACHES

Brookshire argues, however, that even if the limitations period was not expired, the doctrine of laches bars Wilmington's claims. The trial court did not address this issue, but indicated there may be a factual dispute. We remand the case to the trial court to address the laches issue in the first instance.

### A. STANDARD OF REVIEW

"Equitable issues are [also] reviewed de novo, including equitable defenses such as laches." *Stock Bldg Supply, LLC v Crosswinds Communities, Inc*, 317 Mich App 189, 199; 893 NW2d 165 (2016). "We review for clear error the findings of fact supporting the trial court's equitable decision." *Twp of Yankee Springs v Fox*, 264 Mich App 604, 611; 692 NW2d 728 (2004). "A finding is clearly erroneous where this Court is left with a definite and firm conviction that a mistake has been made." *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 194-195; 870 NW2d 731 (2015) (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

The trial court did not address Brookshire's laches argument. In fact, it expressed a belief that there may be "genuine issues of material fact" regarding the applicability of the laches doctrine before granting summary disposition on other grounds. Under either MCR 2.116(C)(7) or (C)(10), summary disposition is inappropriate if there is a factual dispute on which reasonable minds may

differ regarding whether the equitable doctrine of laches should apply. Accordingly, we find it appropriate to remand to the trial court for it address the applicability of laches.

The laches doctrine "requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant." *Williamstown Twp v Sandalwood Ranch, LLC*, 325 Mich App 541, 553; 927 NW2d 262 (2018) (quotation marks omitted). "The defendant has the burden of proving that the plaintiff's lack of due diligence resulted in some prejudice to the defendant." *Yankee Springs Twp v Fox*, 264 Mich App 604, 611; 692 NW2d 728 (2004). "A party guilty of laches is estopped from asserting a right it could have and should have asserted earlier." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 589; 939 NW2d 705 (2019) (quotation marks omitted). "Typically, laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert." *Id*. (quotation marks, citation, and alteration omitted). Critically here, "laches can apply 'even though the period of limitations has not run.'" *Knight v Northpointe Bank*, 300 Mich App 109, 119; 832 NW2d 439 (2013).

On remand, the trial court should consider, among the parties' other claims and defenses, the application of the equitable doctrine of laches.

## IV. CONCLUSION

For the reasons stated above, we reverse the trial court's finding that the statute of limitations bars Wilmington's claims, and remand for the court to determine whether the equitable doctrine of laches applies to bar those claims. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Brock A. Swartzle
/s/ James Robert Redford